PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 09-3105, 09-3532 and 09-3793
_____

LANDSMAN & FUNK PC,
and all others similarly situated,
Appellant in 09-3105

v.

SKINDER-STRAUSS ASSOCIATES,
a New Jersey Partnership
_____

GOODRICH MANAGEMENT CORP,
on behalf of itself and all others similarly situated,
Appellant in 09-3532

v.

AFGO MECHANICAL SERVICES INC
_____

GOODRICH MANAGEMENT CORP,
on behalf of itself and all others similarly situated

v.

FLIERWIRE INC
doing business as SCHEIN MEDIA

Goodrich Management Corp,
Appellant in 09-3793

———————

Appeals from the United States District Court
for the District of New Jersey
(D.C. Civil Nos. 2-08-cv-03610,
2-09-cv-00043, and 2-08-cv-05818)
District Judges: Honorable Katharine Hayden,
Honorable William J. Martini, and
Honorable Peter G. Sheridan

———————

Argued May 26, 2010

Before:  McKEE, <u>Chief</u> <u>Judge</u>, RENDELL
and GARTH, <u>Circuit</u> <u>Judges</u>.

(Opinion Filed April 4, 2011)

———————

Aytan Y. Bellin, Esq.    **[ARGUED]**
Bellin & Associates
85 Miles Avenue
White Plains, NY 10606
   *Counsel for Appellants*

Michael R. McDonald, Esq.   **[ARGUED]**
Damian V. Santomauro, Esq.
Gibbons
One Gateway Center
Newark, NJ 07102-5310
  *Counsel for Appellee*
  *Skinder Strauss Associates,*
  *a New Jersey Partnership*

Louis A. Bove, I, Esq.
Jay M. Green, Esq.   **[ARGUED]**
Bodell, Bove Grace & Van Horn
30 South 15th Street
One Penn Square West, 6th Floor
Philadelphia, PA 19102

Kristin Hitsous, Esq.
Rosabianca & Associates
14 Wall Street, 20th Floor
New York, NY 10005
  *Counsel for Appellee*
  *Afgo Mechanical Services Inc.*

David J. Bloch, Esq.   **[ARGUED]**
L'Abbate, Balkan, Colavita & Contini
7 Regent Street
Suite 711
Livingston, NJ 07039
  *Counsel for Appellee*
  *Flierwire Inc, doing business*
  *as SCHEIN MEDIA*

3

---

## OPINION OF THE COURT

---

RENDELL, <u>Circuit</u> <u>Judge</u>.

### A.

This consolidated appeal encompasses three class actions brought in the District Court for the District of New Jersey under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b). The TCPA is a unique federal statute that provides a private right of action for recipients of unsolicited facsimiles, as well as statutory damages of $500 per "violation." The plaintiffs in these suits alleged that each respective defendant sent over 10,000 unsolicited fax advertisements to plaintiffs at their New York or New Jersey offices, and to thousands of others throughout the country, in violation of the TCPA.[1] The plaintiffs in each

---

[1] In each of the cases, the plaintiffs sought to represent three classes: Class A, consisting of all persons in the United States to whom defendant sent or caused to be sent a fax advertisement without the recipient's express invitation or permission between four years before the filing of the complaint through July 8, 2005; Class B, consisting of all persons to whom defendant sent or caused to be sent a fax advertisement, which did not contain a notice as required by 47 U.S.C. § 227(b)(2)(D), between July 9, 2005 through July 30, 2006; and Class C, consisting of all persons to whom defendant sent or caused to be sent a fax, which did not contain a notice as required by 47 C.F.R. § 64.1200(a)(3)(iii), between August 1, 2006 through the present.

case requested more than $5 million in damages for themselves and the members of the classes they represented. All three cases were dismissed by the District Courts on the grounds that plaintiffs' claims did not fulfill the requirements of diversity jurisdiction.[2] Although the District Courts' specific reasons for dismissal varied slightly, a common question arises in our review of each of the cases: whether, notwithstanding our ruling in *ErieNet, Inc. v. Velocity Net,*

---

[2]In *Landsman & Funk, P.C. v. Skinder-Strauss Associates*, 636 F. Supp. 2d 359 (D.N.J. 2009), the District Court dismissed plaintiffs' complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of jurisdiction; it held that it lacked federal question jurisdiction under *ErieNet* and diversity jurisdiction because, under New York law, plaintiffs cannot bring class actions for statutory damages and, thus, the plaintiffs here could not satisfy the $5 million amount-in-controversy requirement under the Class Action Fairness Act ("CAFA"). In *Goodrich Management Corp. v. Afgo Mechanical Services, Inc.*, No. 09-00043, 2009 WL 2602200 (D.N.J. Aug. 24, 2009), the District Court dismissed plaintiffs' complaint under Rule 12(b)(1) and Rule 12(b)(6); it found that it lacked federal question jurisdiction under *ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513 (3d Cir. 1998), and determined that, since plaintiffs could not show that they were entitled to Rule 23 class certification, it lacked diversity jurisdiction because CAFA's amount-in-controversy requirement could not be met. The *Goodrich Management Corp. v. Flierwire, Inc.* Court dismissed the case for lack of subject matter jurisdiction pursuant to Rule 12(h)(3) based entirely on the reasoning in *Landsman* and *Afgo*. No. 08-5818, 2009 WL 3029758 (D.N.J. Sept. 22, 2009).

*Inc.*, 156 F.3d 513 (3d Cir. 1998), that private TCPA claims do not present a federal question, the federal courts can exercise diversity jurisdiction over private suits brought under the TCPA. On appeal, appellees contend that the three District Courts that ruled on the issue of jurisdiction erred because none held – as they should have – that there can be no diversity jurisdiction over claims under the TCPA.[3] Because this argument, if adopted, would be dispositive of all three cases – in that dismissal would be appropriate in each case if it is correct – we address this issue before considering other issues raised as to the propriety of the District Courts' rulings in each case.

In *ErieNet*, we held that Congress intended to divest federal courts of federal question jurisdiction over individual TCPA claims. We are now called upon to decide whether our reasoning in *ErieNet* extends to diversity jurisdiction. That is, did Congress intend that these actions should be maintained *exclusively* in state courts such that federal courts cannot exercise diversity jurisdiction over them? We hold here that Congress did not intend for exclusive state court jurisdiction. The TCPA does not strip federal courts of diversity jurisdiction over actions brought under § 227(b)(3). Given

---

[3]Though this is not the focus of appellees' argument, it is always our duty to assure ourselves of the existence of subject matter jurisdiction. *Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 223 (3d Cir. 2000). *See also Bender v. Wiliamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) ("[E]very federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review.'" (internal citations omitted)).

our ruling that each District Court has jurisdiction over its respective plaintiffs' private TCPA class action claims pursuant to 28 U.S.C. § 1332(d), we also must address the Courts' class certification determinations, as discussed more fully below.

We have jurisdiction under 28 U.S.C. § 1291 to review the District Courts' orders dismissing these cases for lack of subject matter jurisdiction. We exercise plenary review of a district court's § 12(b)(1) dismissal for lack of jurisdiction and a district court's § 12(b)(6) dismissal for failure to state a claim. *McGovern v. City of Phila.*, 554 F.3d 114, 115 (3d Cir. 2009); *Angelino v. N.Y. Times Co.*, 200 F.3d 73, 87 (3d Cir. 1999). We also exercise plenary review of a district court's resulting jurisdictional determination. *Umland v. PLANCO Fin. Serv.*, 542 F.3d 59, 63 (3d Cir. 2008). We review a decision to certify or deny a class for abuse of discretion. *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 136 (3d Cir. 2000) (citing *In re Prudential Ins. Co. of Am. Sales Litig.*, 148 F.3d 283, 299 (3d Cir. 1998)).

B.

The TCPA, which was passed in 1991 as part of an amendment to the Communications Act of 1934, declares it unlawful under federal law "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement," unless certain statutory exceptions apply. 47 U.S.C. § 227(b)(1)(C). It contains distinct provisions for private parties on the one hand, and state attorneys general on the other, to enforce this prohibition by litigation. § 227(b)(3), (f). Section 227(b)(3), entitled "Private right of action," provides that:

7

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3). Thus, this private right of action allows a person, "if otherwise permitted by the laws or rules of court of a State, [to] bring in an appropriate court of that State" a private action for damages or injunctive relief, and entitles a successful plaintiff to recover damages of at least $500 per unsolicited fax. Another provision, whereby state

attorneys general can bring civil actions for damages and injunctive relief, provides that the federal courts "shall have exclusive jurisdiction" over all such actions. § 227(f)(1), (2). It also provides that the TCPA does not prevent state officials from bringing similar actions in state court or otherwise exercising their powers under state law. § 227(f)(5), (6).

In enacting this legislation, Congress explained that it sought "to facilitate interstate commerce by restricting certain uses of facsimile ([f]ax) machines and automatic dialers." S. Rep. No. 102-178, at 1 (1991), *reprinted in* 1991 U.S.S.C.A.N. 1968, 1968. It noted that "unsolicited calls placed to fax machines . . . often impose a cost on the called party (fax messages require the called party to pay for the paper used . . . )." *Id.* at 1969. In addition, a so-called "junk fax" "occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax." H.R. Rep. No. 102-317, at 10 (1991). Congress also noted the need for federal regulation to fill the gaps between individual states' regulatory efforts, since "[s]tates do not have the jurisdiction to protect their citizens against those who use [automated dialing] machines to place interstate telephone calls." S. Rep. No. 102-178, at 5. That is, although "[m]any States have passed laws that seek to regulate telemarketing," "telemarketers can easily avoid the restrictions of State law, simply by locating their phone centers out of state." H.R. Rep. No. 102-317, at 9-1. This history suggests that Congress intended both to "fill the gaps" in state regulation and to give consumers the right to file TCPA actions in state court. The TCPA, and its private right of action, were thus designed to put "teeth" into state regulation, rather than to establish a distinctly federal policy. Essentially, Congress "sought to put

9

the TCPA on the same footing as state law . . . , supplementing state law where there were perceived jurisdictional gaps." *Gottlieb v. Carnival Corp.*, 436 F.3d 335, 342 (2d Cir. 2006).

In introducing the bill, its sponsor, Senator Ernest Hollings, described the private right of action as follows:

> The . . . bill contains a private right-of-action provision that will make it easier for consumers to recover damages from receiving these computerized calls. The provision would allow consumers to bring an action in State court against any entity that violates the bill. The bill does not, because of constitutional constraints, dictate to the States which court in each State shall be the proper venue for such an action, as this is a matter for State legislators to determine. Nevertheless, it is my hope that States will make it as easy as possible for consumers to bring such actions, preferably in small claims court. The consumer outrage at receiving these calls is clear. Unless Congress makes it easier for consumers to obtain damages from those who violate this bill, these abuses will undoubtedly continue.

> Small claims court or a similar court would allow the consumer to appear before the court without an attorney. The amount of damages in this legislation is set to be fair to both the consumer and the telemarketer. However, it would defeat the purposes of the bill if the attorneys' costs to consumers of bringing an action were greater than the potential damages. I thus expect that the States will act reasonably in permitting their citizens to go to court to enforce this bill.

137 Cong. Rec. S16204 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings).

## C.

The TCPA "presents an unusual constellation of statutory features": "the express creation of a private right of action, an express jurisdictional grant to state courts to entertain them, and silence as to federal court jurisdiction of private actions." *Chair King, Inc. v. Houston Cellular Corp.*, 131 F.3d 507, 512 (5th Cir. 1997). As noted above, we concluded in *ErieNet* that, based on the language, structure, and legislative history of the statute, there is no federal question jurisdiction over private actions brought under the TCPA. 156 F.3d at 516-19. In *ErieNet*, we interpreted the permissive language of § 227(b)(3) providing that a person "may" bring an action in state court to suggest that "Congress

11

intended to authorize private causes of action *only* in state courts, and to withhold federal [question] jurisdiction." *Id.* at 516 (emphasis in original). We focused on the distinction between the general jurisdiction of state courts and the limited jurisdiction of federal courts. *See id.* ("[T]here is no presumption of jurisdiction in the federal courts."). It was significant, we said, that the statute's permissive authorization referred only to state courts of general jurisdiction; "'that authorization cannot confer jurisdiction on a federal court because federal courts are competent to hear only those cases specifically authorized.'" *Id.* (quoting *Int'l Sci. & Tech. Inst., Inc. v. Inacom Commc'ns, Inc.*, 106 F.3d 1146, 1151 (4th Cir. 1997)). We noted that subject matter jurisdiction must be conferred by statute and that the TCPA did not expressly do that. *Id.*

The majority of courts of appeals to consider the question have similarly concluded that federal courts lack federal question jurisdiction over private TCPA claims. Citing § 227(b)(3)'s explicit authorization of jurisdiction over private actions in state courts and the absence of any reference to federal court, these courts have concluded that Congress did not intend to grant the federal courts federal question jurisdiction over private TCPA claims. *See Murphey v. Lanier*, 204 F.3d 911, 915 (9th Cir. 2000); *Foxhall Realty Law Offices, Inc. v. Telecomms. Premium Servs., Ltd.*, 156 F.3d 432, 435 (2d Cir. 1998); *Nicholson v. Hooters of Augusta, Inc.*, 135 F.3d 1287, 1289 (11th Cir. 1998); *Chair King, Inc. v. Houston Cellular Corp.*, 131 F.3d 507, 514 (5th Cir. 1997); *Int'l Sci. & Tech. Inst., Inc. v. Inacom Commc'ns, Inc.*, 106 F.3d 1146, 1156 (4th Cir. 1997). Only two courts of appeals have held otherwise. *See Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 463-65 (6th Cir. 2010)

12

(finding federal question jurisdiction under the TCPA based on § 227(f)(2)'s explicit provision for exclusive federal jurisdiction, 28 U.S.C. § 1441(a)'s authorization of removal to federal court unless expressly provided by Congress, and on its reading of *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005)); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 450-51 (7th Cir. 2005) (similarly finding federal question jurisdiction under the TCPA based on § 227(f)(2) and *Grable*).

Though we addressed federal question jurisdiction extensively in *ErieNet*, we had no occasion to consider whether there can be diversity jurisdiction over TCPA claims.[4] 156 F.3d at 520. The issue presently before us is

---

[4]We acknowledge that *ErieNet* referred, somewhat imprecisely, to "federal court jurisdiction" and "federal jurisdiction." However, notwithstanding Judge Garth's view, our analysis and holding were limited to federal question jurisdiction. Our opinion in *ErieNet* begins by referring to "a district court's federal question jurisdiction" and Article III's authorization of "arising under" (i.e., federal question) jurisdiction, and then refers repeatedly to jurisdiction under 28 U.S.C. § 1331. 156 F.3d at 515, 518-20. By contrast, neither diversity jurisdiction nor the statute that authorizes it, 28 U.S.C. § 1332, is mentioned in the opinion at all. *See Watson v. NCO Grp., Inc.*, 462 F. Supp. 2d 641, 646 n.2 (E.D. Pa. 2006) ("[O]riginal jurisdiction pursuant to sections 1331 and 1337 were the only types of jurisdiction at issue in *ErieNet*. The court did not discuss the effects of its holding on supplemental or diversity jurisdiction.") (internal citation omitted)). Nor do the other Courts of Appeals cases finding that federal courts lack § 1331 jurisdiction under the TCPA

whether diversity jurisdiction exists in the federal courts, notwithstanding our conclusion in *ErieNet* that Congress intended for private litigants to seek recourse in state courts for TCPA violations. In *ErieNet* we asked whether Congress *conferred* subject-matter jurisdiction in the TCPA;[5] here we ask whether Congress intended state courts to have exclusive jurisdiction over TCPA claims and, thus, *stripped away* diversity jurisdiction. For the reasons set forth below, we hold that Congress did not divest the federal courts of diversity jurisdiction over private causes of action under the

---

compel the conclusion that they also lack diversity jurisdiction. *See Accounting Outsourcing, LLC v. Verizon Wireless Pers. Commc'ns, LP*, 294 F. Supp. 2d 834, 839-40 (M.D. La. 2003) ("Nothing in the reasoning of any of the courts' [§1331 TCPA] opinions, however, suggests it would be logical to extend that reasoning to diversity jurisdiction.").

[5]Our references to "exclusivity" of jurisdiction and jurisdiction "only" in state courts in *ErieNet* must, as then-Judge (now Justice) Sotomayor stated about similar references in *Foxhall*, "be read in context." *Gottlieb*, 436 F.3d at 337. *ErieNet* addressed only federal question jurisdiction, not diversity jurisdiction, so our references to "exclusive" state jurisdiction there must be read to describe only "exclusive *substance-based* jurisdiction" over TCPA claims in the state courts, not truly exclusive state court jurisdiction. Notwithstanding Judge Garth's reference to Congress's having "provided" and "decreed" that "all" cases be brought "only" in state court, the TCPA does not so state. (If it did, I would share Judge Garth's view on the issue before us).

14

TCPA. Finding that we have diversity jurisdiction over TCPA claims does not disturb the concepts we set down in *ErieNet*; the TCPA has neither divested federal courts of diversity jurisdiction over private causes of action nor conferred on them federal question jurisdiction.[6]

---

[6]Chief Judge McKee takes issue with our opinion in *ErieNet*, urging that three recent Supreme Court opinions have undermined the reasoning and result in that case. *ErieNet* is a precedential opinion of our Court that is not before us on this appeal. Even if it were, however, the Supreme Court cases referred to did not involve a federal statute that set forth a private right of action for litigants to proceed in state court. The statute in *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 641 (2002), the Telecommunications Act of 1996, explicitly provided that an action could be brought "in an appropriate Federal district court," and in *Breuer v. Jim's Concrete of Brevard*, 538 U.S. 691 (2003), the statute at issue provided that an action to recover liability may be maintained "'in any federal or state court of competent jurisdiction.'" *Id.* at 693 (quoting 29 U.S.C. § 216(b)). Unlike the TCPA, neither statute evinces any congressional intent to keep causes of action in state court in the absence in diversity. Neither statute specifically directs private rights of action to state court. Finally, in *Whitman v. Department of Transportation*, 547 U.S. 512 (2006) (per curiam), the Court noted that the district court, in considering the question of whether it has jurisdiction under 5 U.S.C. § 7121, should look to the statute itself and the overall Act in which it appears to discern whether Congress intended for jurisdiction to lie elsewhere. *Id.* at 513-14. In *Erienet*, we did exactly that and found that the TCPA removed the

15

D.

Here, the specific provision granting subject matter jurisdiction to the federal courts is 28 U.S.C. § 1332(d), an amendment added to § 1332 pursuant to the Class Action Fairness Act ("CAFA") of 2005. Under CAFA, federal courts have original jurisdiction over class actions where there is minimal diversity and the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs. §1332(d)(2), (6). In each of these cases, minimal diversity is present and, given defendants' alleged transmission of over 10,000 unsolicited faxes and the possibility of treble damages under the TCPA, the aggregate amount in controversy exceeds $5 million CAFA requires. Thus, in light of our ruling that federal courts can exercise diversity jurisdiction over TCPA claims when the requirements of diversity are otherwise fulfilled, the New Jersey District Courts here had subject-matter jurisdiction under § 1332(d).

In holding that there is diversity jurisdiction under the TCPA, we rely heavily on then-Judge (now Justice) Sotomayor's opinion in *Gottlieb v. Carnival Corp.*, where the Second Circuit persuasively applied two canons of statutory interpretation to the TCPA – the "whole act rule," which instructs that parts of a statute should be placed in the context of the entire statutory scheme and the principle that reliance on background principles of law inform a statute's interpretation – to conclude that federal courts should have diversity jurisdiction over § 227(b)(3) claims. 436 F.3d at

jurisdiction that § 1331 often confers on federally created causes of action. Accordingly, these cases are inapposite.

16

338-343. Though we do not adopt *Gottlieb*'s reasoning wholesale, we note the soundness of the Second Circuit's approach and draw on it considerably.

Our starting point is the historic grant of diversity jurisdiction to the federal courts, first under the Judiciary Act of 1789, then as codified at 18 U.S.C. § 1332. As did the *Gottlieb* court, we understand § 1332 as "an independent grant of federal jurisdiction intended to prevent discrimination against non-citizen parties regardless of whether state or federal substantive law is involved." 437 F.3d at 340. As such, diversity jurisdiction is "presumed to exist for all causes of action so long as the statutory requirements are satisfied." *Id.* Indeed, the language of § 1332 provides that district courts "shall have jurisdiction of *all civil actions where*" the matter in controversy exceeds $75,000 and where the parties are diverse. 18 U.S.C. § 1332 (emphasis added). Federal courts only lack diversity jurisdiction where Congress has explicitly expressed an intent to strip federal courts of this jurisdiction, *Gottlieb*, 436 F.3d at 338, or where such jurisdiction is found to be irreconcilable with a congressional statute. *U.S. Fax Law Ctr., Inc. v. iHire, Inc.*, 476 F.3d 1112, 1117 (10th Cir. 2007) (citing *Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 808 (1976)). *See also id.* at 1117 ("[A]bsent an explicit indication that Congress intended to create an exception to diversity jurisdiction, one may not be created by implication.") (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 700 (1992)).

It is useful to begin with the origins of the two traditional bases for subject matter jurisdiction. Federal courts did not have general federal question jurisdiction until 1875. *Idaho v. Couer d'Alene Tribe of Idaho*, 521 U.S. 261 (1997). Before then, federal courts had jurisdiction over

17

substantive law claims either when the federal statute sought to be enforced contained a specific grant of federal court jurisdiction or when diversity of citizenship was present. Diversity jurisdiction, by contrast, was "expressly contemplated by Article III of the United States Constitution" and has provided a jurisdictional basis for entry into the federal courts since the very inception of our judicial system in the Judiciary Act of 1789. *Kopff v. World Research Grp., LLC*, 298 F. Supp. 2d 50, 55 (D.D.C. 2003). *See also Hertz Corp. v. Friend*, --- U.S. ---, 130 S. Ct. 1181, 1188 (2010) (noting the First Judiciary's Act's grant of authority to federal courts to hear suits "'between a citizen of the State where the suit is brought, and a citizen of another State'") (quoting § 11, 1 Stat. 78)).

Today, diversity jurisdiction is "based on a grant of jurisdictional authority from Congress" in the form of 28 U.S.C. § 1332. *U.S. Fax Law Ctr.*, 476 F.3d at 1117 (citing *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 171 (1939)). "As to diversity cases, Congress has given the federal courts cognizance, concurrent with the courts of the several states. [A party's] consent [to be sued in the courts of a state], therefore, extends to *any court* sitting in the state which applies the laws of the state." *Id.* (internal citations and quotation marks omitted) (emphasis added). Diversity jurisdiction's purpose – of "prevent[ing] apprehended discrimination in state courts against those not citizens of the state," *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 74 (1938) – exists independently of other considerations like the subject matter of the lawsuit or the nature of the law under which the suit is filed. *See Accounting Outsourcing*, 294 F. Supp. 2d at 838 ("[N]o matter how one may label the diversity statute, it exists for an independent and important reason, unrelated to

18

the subject matter of the lawsuit."). Indeed, the "presupposition of diversity jurisdiction," a concern with local bias, is usually not affected by other aspects of the cause of action. *Jerome G. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 546 n.6 (1995). Consequently, as a general matter, where parties are diverse and the amount in controversy meets the statutory bar, § 1332 operates as a threshold grant of jurisdiction.[7] Other bases for federal jurisdiction may be expressly or impliedly proscribed, but such proscriptions are typically responsive to concerns that are either irrelevant or outweighed when the requirements for diversity jurisdiction are met.

Courts have long recognized the presumption of diversity jurisdiction regardless of the type of law under which a lawsuit arises. In *Dodge v. Woolsey*, 59 U.S. 331 (1855), for example, plaintiff, a Connecticut citizen and an investor in an Ohio corporation, sued, among others, an Ohio tax collector who was trying to collect taxes from the corporation. Plaintiff claimed that the taxes, which resulted

---

[7]Perhaps due to the mechanical nature of diversity jurisdiction's requirements, commentators have noted that, even after federal question jurisdiction was codified, litigants relied on diversity jurisdiction as a basis for entering federal court even where federal question jurisdiction existed. *See* Ann Woolhandler*, The Common Law Origins of Constitutionally Compelled Remedies*, 107 Yale L.J. 77, 85, 134 (1997) ("In seeking injunctions against taxes alleged to violate the Constitution, federal court litigants continued to rely heavily on diversity jurisdiction well into th[e] [twentieth] century, long after the federal question statute had become available.").

from the passage of a new state law and state constitution in Ohio, violated the Contracts Clause of the U.S. Constitution because they abrogated the terms of the corporate charter the corporation had received from Ohio. *Id.* at 335-40. Today, this claim would fall squarely under a federal court's federal question jurisdiction, but the Court's emphasis here was on the jurisdictional baseline that existed by virtue of the parties' diversity of citizenship. The Court rejected defendant's argument that the suit was within the exclusive jurisdiction of the state courts and noted "that the courts of the United States and the courts of the States have concurrent jurisdiction in all cases between citizens of different States, *whatever may be the matter in controversy, if it be one for judicial cognizance . . .* and that it is no objection to this jurisdiction, that there is a remedy under the local law." *Id.* at 347 (emphasis added). It is the parties being from different states, not the subject matter, that is determinative.

The presumptive existence of federal courts' diversity jurisdiction over all causes of action that meet § 1332's requirements is bolstered by the "well-established principle of statutory construction that repeal or amendment by implication is disfavored." *Gottlieb*, 436 F.3d 335 (citing *Colo. River*, 424 U.S. at 808; *Rosencrans v. United States*, 165 U.S. 257, 262 (1897)). As the Supreme Court has emphasized, "[w]hen there are statutes," like § 1332, "clearly defining the jurisdiction of the courts, the force and effect of such provisions should not be disturbed by a mere implication." 165 U.S. at 262. *See also Kopff*, 298 F. Supp. 2d at 55 ("A federal court's original jurisdiction in diversity cases is not subject to implied exceptions."). In *Colorado River*, the Supreme Court stated that, "[i]n the absence of some affirmative showing of an intent to repeal, the only

20

permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." 424 U.S. at 808. Clearly, § 227(b)(3) does not evince an intent to repeal § 1332 and is in no way irreconcilable with § 1332.

Federal question jurisdiction, by contrast, lacks diversity jurisdiction's expansive nature and straightforward applicability. Where a federal question clearly exists, district courts have original jurisdiction unless a specific statute places jurisdiction elsewhere, *U.S. Fax Law Ctr.*, 476 F.3d at 1117 (citing *Int'l Sci.*, 106 F.3d at 1154), and if a federal question is not as clearly presented, determining whether "arising under" jurisdiction exists requires a multi-factorial analysis of how federal the claim really is; the process is more nuanced than the easily applied two-factor test for diversity jurisdiction, and the purposes served by allowing access to the federal courts under each statute are quite distinct. As the Fifth Circuit explained in finding that federal courts lack federal question jurisdiction under the TCPA, "[t]here is no 'single, precise definition' of when a case falls within the original 'federal question' jurisdiction of federal courts; 'rather, the phrase "arising under" masks a welter of issues regarding the interpretation of federal and state authority and proper management of the federal jurisdictional system.'" *Chair King*, 131 F.3d at 510 (quoting *Merrell Dow Pharms. v. Thompson*, 478 U.S. 804, 808 (1986) (internal citations omitted)).[8] Assessing whether a federal court has diversity

---

[8]Indeed, § 1331's "all civil actions arising under" language has been interpreted to ensure that only cases "in which a well-pleaded complaint establishes either [1] that federal law creates the cause of action or [2] that the plaintiff's right to relief necessarily depends on resolution of a substantial

jurisdiction generally avoids such thorny analysis. Thus, collapsing federal question and diversity jurisdiction together in the context of the TCPA ignores the meaningful difference between federal question jurisdiction, a constrained basis for jurisdiction that applies in a "narrow class" of federally-oriented cases, and diversity jurisdiction, which has traditionally been open to claims based on any cause of action out of concern for avoiding bias against out-of-state parties.[9]

question of federal law" come into federal court under the court's federal question jurisdiction. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 28 (1983). The federal question statute has not been read to confer upon federal courts "the full breadth" of federal question jurisdiction but instead has "been construed more narrowly than its constitutional counterpart." *Chair King*, 1311 F.3d at 510 (citing *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 494-95 (1983)); *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 379-80 (1959)). By contrast, § 1332(a)'s "all civil actions where" language has, in the absence of a specific directive otherwise, been interpreted to mean just what it says: when the conditions following "where" – sufficient amount in controversy and diversity of citizenship – are met, the suit can come into federal court.

[9]In *Brill*, the Seventh Circuit, in dicta, conflated the two traditional bases for jurisdiction without explanation or citation – "if state jurisdiction really is 'exclusive,' then it knocks out § 1332 as well as § 1331." 427 F.3d at 450. This is the only instance where a Court of Appeals, albeit without providing any reasoning, has concluded that the existence or absence of federal question jurisdiction under the TCPA

*Bryan v. BellSouth Commc'n, Inc.*, 377 F.3d 424, 434 (4th Cir. 2004).

Nor does the fact that the TCPA is a federally *created* cause of action compel us to put diversity jurisdiction and federal question jurisdiction under the TCPA on equal footing. Though it is indeed "rare [for a] federal statute . . . [to] create[] a cause of action that gives rise to jurisdiction under § 1332, but not under § 1331," *Gottlieb*, 436 F.3d at 342 n.8, it is not logically inconsistent. First, diversity jurisdiction is not by its statutory terms limited to state-law claims. As Judge Sotomayor observed in *Gottlieb*, "nothing in § 1332 indicates that diversity jurisdiction does not exist where federally-created causes of action are concerned." 436 F.3d at 335.[10] Moreover, in the instances where federal

_____

dictates the same for diversity jurisdiction. For the reasons discussed herein, we reject this conclusion.

[10]A federal court's exercise of diversity jurisdiction over a federally-created cause of action will put the court in the "odd" position of "apply[ing] federal substantive *and* procedural law," *Gottlieb*, 436 F.3d at 342 n.8 (emphasis added). This in no way suggests that diversity jurisdiction is improper; it merely "emphasizes the *sui generis* nature of the [TCPA]." *Id.* The Sixth Circuit has also recognized and approved of this departure from *Erie*'s directive to apply state substantive law and federal procedural law in diversity cases – a directive that is only applicable where state law causes of action are at issue. *See Charvat v. GVN Mich., Inc.*, 561 F.3d 623, 630 n.6 (6th Cir. 2009). In *Charvat,* the Sixth Circuit rejected the district court's application of Ohio law in interpreting the federal TCPA and explained that, although

statutes do not give rise to § 1331 jurisdiction, there is no indication that the rationale behind the absence of federal question jurisdiction also wipes out diversity jurisdiction.

Though the "vast majority" of cases that fall under § 1331 are "described by Justice Holmes' adage that 'a suit arises under the law that creates the cause of action,'" *Merrell Dow*, 478 U.S. at 819 (quoting *Am. Well Works Co v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916)), it is not the case that every private cause of action under a federal statute begets federal question jurisdiction. Rather, "[i]nferior federal courts' 'federal question' jurisdiction ultimately depends on Congress's intent as manifested by the federal statute creating the cause of action." *Chair King*, 131 F.3d at 510 (citing *Sheldon v. Sill*, 49 U.S. (8 How.) 441, 448 (1850)). *See also Int'l Sci.*, 106 F.3d at 1154 ("Because federal-question jurisdiction ultimately depends on an act of Congress, the scope of the district courts' jurisdiction depends on that congressional intent manifested in [the] statute.").

federal courts sitting in diversity usually "apply state substantive law to state-law claims, this case presents a very different situation, because the statute on which the claims are based is itself a federal statute. As we have noted, 'the applicability of state law depends on the nature of the issue before the federal court and not on the basis for its jurisdiction.'" *Id.* (quoting *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.,* 491 F.3d 320, 333-34 (6th Cir. 2007) (internal quotation omitted)). Because the issue before it was "the interpretation of a federal statute," the *Charvat* court reasoned that it was "not bound by decisions of the state courts of Ohio interpreting the federal TCPA." *Id.* (citing *Gottlieb*, 436 F.3d at 348 n.8).

24

Indeed, as our focus in *ErieNet* demonstrates, congressional intent is a touchstone of federal question jurisdiction analysis. *See Merrell Dow*, 478 U.S. at 812 (noting that it has "consistently emphasized, in exploring the outer reaches of § 1331," that the determination of whether federal question jurisdiction exists over nonfederal causes of action "require[s] sensitive judgments about congressional intent, judicial power, and the federal system"). With diversity jurisdiction, however, unless Congress has been explicit in mandating exclusive state court jurisdiction or in precluding diversity jurisdiction, congressional intent is largely irrelevant to determining whether a federal court has diversity jurisdiction over a given cause of action.

Suits authorized by the federal statute at issue in *Shoshone Mining Co. v. Rutter*, 177 U.S. 505 (1900), present an example of causes of action which, though created by federal law, do not fall under federal courts' federal question jurisdiction. In *Shoshone*, the Court considered whether a federal statute expressly authorizing "adverse suits" to determine title to land established federal question jurisdiction. *Id.* at 506. The statute provided that claims were to be determined "by local customs or rules of miners in the several mining districts, so far as the same are applicable and not inconsistent with the laws of the United States; or by the statute of limitations for mining claims of the State or Territory where the same may be situated." *Id.* at 508. The mere fact that a suit "takes its origin in the laws of the United States" does not, the Court reasoned, necessarily make it "one arising under the Constitution or laws of the United States," lest virtually every dispute over title to land "in the newer

25

States" raise a federal question. *Id.* at 507.[11] Accordingly, the Court held that the federal cause of action created by the mining statute did not confer federal question jurisdiction over claims that turned entirely on state law. *Id.*

However, in noting the "conceded fact that, unless the amount in controversy is over $2,000, no jurisdiction attaches to the Federal court," *id.* at 511, the Court suggested that federal courts could exercise diversity jurisdiction over claims brought under the mining statute. Indeed, in *International Science*, the Fourth Circuit pointed to *Shoshone* as an example of a case where the Court found that, "notwithstanding the federal statutory basis, Congress intended that because of the predominance of state issues that cases be litigated in state courts *unless there was diversity of citizenship*." 106 F.3d at 1154 (emphasis added). Even in *Shoshone*, where the statute at issue dealt with subject matter of the most local variety, land title, and specifically required the application of local laws and rules,[12] it was not interpreted

---

[11]*See also Shultis v. McDougal*, 225 U.S. 561, 569 (1912) ("A suit to enforce a right which takes its origins in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction, or effect of such a law, upon the determination of which the result depends.").

[12]Granted, the mining statute did not refer to the venue in which suits should or may be brought, whereas the TCPA specifically states that causes of action "may be brought" in "an appropriate court of that state." 27 U.S.C. § 227(b)(3).

26

to create exclusive state court jurisdiction. The *Shoshone* Court's justification for removing certain federally created causes of action from federal courts' § 1331 jurisdiction where state law issues dominate or state rules govern does not apply to diversity jurisdiction, which, as we have described, "derives its basis not on the presence of a federal question, but rather on an independent anti-discrimination rationale." *Biggerstaff v. Voice Power Telecomms., Inc.*, 221 F. Supp. 2d 652, 657 (D.S.C. 2002).[13] Both the mining statute and the

---

[13]Similarly, in *Bay Shore Union Free School District v. Kain*, 485 F.3d 730, 733-36 (2d Cir. 2007), the Second Circuit found that federal courts did not have federal question jurisdiction over claims under the Individuals with Disabilities Education Act (IDEA) where those claims turned entirely on state law *and* where diversity of citizenship was absent. IDEA required school districts to provide individualized education programs for disabled schoolchildren and provided that parties "aggrieved by" the state or local agency's review of those programs "shall have the right to bring a civil action" challenging the agency's decision "in any State court of competent jurisdiction or in a district court of the United States." *Id.* at 735 (quoting 20 U.S.C. § 1415(i)(2)(A)). The Second Circuit found that, despite the reference in IDEA's jurisdictional provision to "district courts," district courts lacked § 1331 jurisdiction over IDEA claims where the resolution turned entirely on state law, like the school district's challenge here to the local education agency's determination that the district was obliged to provide a student with a one-to-one aide during class. A federal court, *Bay Shore* said, "may not exercise jurisdiction over a civil action brought under § 1415(i)(2)(A) if the claims asserted turn exclusively on matters of state law *and diversity*

TCPA are examples of federal causes of action that essentially enable state enforcement; as such, neither confers federal question jurisdiction in the federal courts, but neither, without more, disrupts the baseline framework of federal diversity jurisdiction over large claims between diverse parties.[14]

E.

With this understanding of diversity jurisdiction in mind, we turn now to the TCPA itself. Due to the nature of diversity jurisdiction, it would take a "clear and definitive"

---

*of citizenship is absent.*" *Id.* at 736 (emphasis added). As in *Shoshone*, the court's conclusion regarding federal courts' lack of § 1331 jurisdiction under a federally created cause of action did not bear on the independent question of whether federal courts could have diversity jurisdiction under the statute.

[14]Plaintiffs' claims under the mining statute in *Shoshone* and IDEA in *Bay Shore* turned entirely on the interpretation of state law. By contrast, the sources of law applicable in adjudicating TCPA claims are not so clearly limited, thus complicating our § 1331 jurisdictional inquiry – i.e. *Shoshone*'s exception to the rule that "a suit arises under the law that creates the cause of action" does not squarely apply to private causes of action under the TCPA. The presumption of diversity jurisdiction in both cases despite the state-law focus of the mining and IDEA statutes, however, underscores both diversity jurisdiction's independence from the § 1331 inquiry and its baseline presence where it has not been explicitly divested.

28

directive from Congress to persuade us "to remove a party's entitlement to a federal forum based on diversity." *Accounting Outsourcing*, 294 F. Supp. 2d at 838. As the Second Circuit did, we "proceed according to the rule that § 1332 applies to all causes of action, whether created by state or federal law, unless Congress expresses a clear intent to the contrary." *Gottlieb*, 436 F.3d at 340. Our demand for a clear statement comports with our general view that "'repeals by implication are not favored and will not be presumed unless the intention of the legislature is clear and manifest.'" *Hagan v. Rogers*, 570 F.3d 146, 154-55 (3d Cir. 2009) (quoting *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644 (2007) (internal quotation marks and brackets omitted)).

We do not find the TCPA's language sufficiently clear or forceful enough to deprive federal courts of diversity jurisdiction over TCPA claims. Nothing in § 227(b)(3) or the overall statute indicates that Congress intended for individual claims brought under the TCPA to operate any differently than other suits between diverse parties where the amount in controversy meets § 1332's requirements.

First, § 227(b)(3) itself, which states that "[a] person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State" an action for damages against defendants who have violated the TCPA, does not expressly remove federal courts' diversity jurisdiction over TCPA claims. As the Tenth Circuit has noted, "[t]his fact alone is probably sufficient to demonstrate the presence of diversity jurisdiction because '[diversity jurisdiction] is an independent grant of federal jurisdiction . . . [that] is presumed to exist for all causes of action so long as

29

statutory requirements are satisfied.'" *U.S. Fax Law Ctr.*, 476 F.3d at 1117 (quoting *Gottlieb*, 436 F.3d at 340).[15]

---

[15]We note, as *Gottlieb* did, the contrast between the absence of *any* reference to diversity jurisdiction in the TCPA and the overt elimination of such jurisdiction in at least two other federal statutes. *See* 436 F.3d at 340 n.6. The Johnson Act states:

> The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where: (1) *Jurisdiction is based solely on diversity of citizenship* or repugnance of the order to the Federal Constitution; and, (2) The order does not interfere with interstate commerce; and, (3) The order has been made after reasonable notice and hearing; and, (4) A plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1342 (emphasis added). In the Johnson Act, Congress made explicit its intention to preclude subject matter jurisdiction based on diversity. In addition, the legislative history of the Act makes it plain that Congress's purpose in passing the Act was to "prevent out-of state utilities from challenging state administrative orders in federal court," *Accounting Outsourcing*, 294 F. Supp. 2d at 839 (citing *California v. Grace*, 457 U.S. 393, 410 n.22), a purpose that aligns with divesting the federal courts of diversity jurisdiction.

> The Tax Injunction Act provides:
> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax *under*

30

Moreover, the statute's "permissive grant of jurisdiction to state courts," *ErieNet*, 156 F.3d at 523 (Alito, J., dissenting) – its provision that litigants "may" bring private actions in state courts – does not indicate that suits are *required* to be brought in state court; it suggests only that, as

---

*State law* where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341 (emphasis added). Though the text of the TIA does not specifically address diversity jurisdiction, the legislative history indicates that Congress intended to "stop out-of-state corporations from using diversity jurisdiction to gain injunctive relief against a state tax in federal court . . . ." *Jefferson County, Ala. v. Acker*, 527 U.S. 423, 435 (1999). Both the Johnson Act and the TIA "were designed to eliminate disparities between taxpayers who could obtain injunctive relief in federal court – namely out-of-state corporations asserting diversity jurisdiction – and local taxpayers who were left to litigate in state courts where taxpayers often had to pay first and litigate later." *Accounting Outsourcing*, 294 F. Supp. 2d at 839. In these contexts, the usual justification for diversity jurisdiction – preventing discrimination against out-of-state defendants – is absent; in fact, Congress wished to address the converse concern – eliminating any *preference* for out-of-state defendants. With the TCPA, Congress has evinced no such countervailing concern. Neither the TCPA's text nor legislative history suggests any reason for barring federal subject matter jurisdiction where the parties are diverse and the amount in controversy meets the jurisdictional bar.

the text says, they *may* be brought in state courts.[16]  As we observed in *ErieNet*, Congress, with this permissive language, "*referred* . . . [TCPA] claims to state court as forcefully as it could" given possible constitutional difficulties with mandating a resort to state courts.  156 F.3d at 516 (emphasis added).  We found Congress's direction emphatic enough and adequately indicative of a lack of federal concern to remove federal courts' § 1331 jurisdiction over TCPA claims.  The direction, however, is not the kind of precise, unambiguous statement of congressional intent to confer exclusive state court jurisdiction that is required to divest a court of its diversity jurisdiction.  The language in the Johnson Act and the TIA, *see supra* n.15, demonstrates that when Congress wishes to strip federal courts of diversity jurisdiction, it does so clearly, and usually in a context where the policy concerns underlying diversity jurisdiction are absent.  In these instances, a congressional directive to strip courts of diversity jurisdiction need not be inferred from statutory text and legislative history that speak more directly to questions of federal interest, state/federal balance and other barometers of federal question jurisdiction; instead, the abrogation is clearly stated.

The TCPA's statutory structure further supports our interpretation.  *See United States v. CDMG Realty Co.*, 96 F.3d 706, 714 (3d Cir. 1996) (noting that, in statutory construction, "[m]eaning derives from context").  Courts of

---

[16]*See ErieNet*, 156 F.3d at 522 (Alito, J., dissenting) (noting that the TCPA was designed to "'*allow* consumers to bring an action in state court.'")  (quoting 137 Cong. Rec. S16205 (daily ed. Nov. 7, 1991)) .

appeals addressing federal question jurisdiction under the TCPA have pointed out that Congress's drawing of jurisdictional distinctions in other parts of the TCPA made its failure to do so in § 227(b)(3) more significant. The Second Circuit in *Foxhall* and the Fourth Circuit in *International Science* cited § 227(f)(2)'s explicit mandate that federal courts have exclusive jurisdiction over TCPA claims brought by states' attorneys[17] as evidence that where Congress affirmatively intended for federal court jurisdiction, it so stated. In addition, as *Gottlieb* recognized, § 227(f)(2)'s exclusive jurisdiction language further suggests that Congress, in the very same act, knew how to explicitly assign exclusive jurisdiction to one set of courts. Thus, when in § 227(b)(3) it "did not similarly vest categorical, 'exclusive' jurisdiction in state courts for private TCPA claims," it therefore "did not divest federal courts of *both* federal question and diversity jurisdiction." *Gottlieb*, 436 F.3d at 338 (emphasis added). Regarding the overall statutory structure, the Second Circuit concluded, and we agree, that "[j]ust as nothing in the language of § 227(b)(3) expresses a congressional intent to divest the federal courts of jurisdiction under the TCPA, nothing in the statutory structure indicates that intent." *Id.* at 339.

Our interpretation is also consistent with the TCPA's statutory purposes, as revealed in the statute's legislative history. *See Klein v. Vision Lab Telecomm., Inc.*, 399 F. Supp. 528, 534 (S.D.N.Y. 2005) ("This interpretation [that

---

[17]Section 227(f)(2) provides, in relevant part, that "[t]he district courts of the United States . . . shall have exclusive jurisdiction over all civil actions brought under this subsection." 47 U.S.C. § 227(f)(2).

federal courts have § 1332 jurisdiction under the TCPA] is consistent with the purposes of the TCPA, as reflected in the Act's legislative history."). In reading the TCPA to exclude federal question jurisdiction, several courts of appeals have looked to Senator Hollings's suggestion that "state courts provide a more appropriate forum for small value claims and plaintiffs appearing on their own behalf." *Accounting Outsourcing*, 294 F. Supp. 2d at 837 (citing *Int'l Sci.*, 106 F.3d at 1152-53 (internal citations omitted)). *See also, e.g.*, *ErieNet*, 156 F.3d at 518 (citing the congressional record and Senator Hollings's statement); *Int'l Sci*, 106 F.3d at 1152-53 (same). Congress's preference for resolving small TCPA claims in state courts designed to handle them, significant to § 1331 analysis, has little relevance and "little force in a diversity suit, which by definition involves an amount in controversy exceeding $75,000." *U.S. Fax Law Ctr.*, 476 F.3d at 1117 (citing *Accounting Outsourcing*, 294 F. Supp. 2d at 840). As then-Judge (now Justice) Alito noted in his *ErieNet* dissent, "the Senator said nothing about preventing corporate adversaries who are battling over large sums of money from . . . go[ing] to federal court." 156 F.3d at 522.[18] Nothing in the Senator's statements contradicts or even speaks to the basic rationale underlying diversity jurisdiction

---

[18]Judge Alito, who argued that federal courts do have federal question jurisdiction under the TCPA, suggested that such battling corporate adversaries could *choose* to go to federal court, even in the absence of diversity. We disagree with his overall conclusion but concur with his reading of the statute's legislative history – that it "confirm[s] the permissive grant of state jurisdiction found in the statute's text" and does not indicate that Congress intended for exclusive state jurisdiction. 156 F.3d at 522.

34

– protecting out-of-state defendants from pro-citizen bias in the state courts. Indeed, our holding that federal courts have diversity jurisdiction over TCPA claims where § 1332's conditions are met – for the same protectionist reasons they always have diversity jurisdiction over larger claims between diverse parties – in no way conflicts with Congress's wish that individual low-value claims regarding unsolicited faxes be litigated in state courts.[19]

As we have explained, nothing in the statutory text or legislative history of the TCPA expressly indicates that Congress intended to strip federal courts of their diversity

---

[19]In examining the TCPA's statutory purpose, we also note what Congress clearly was *not* contemplating or targeting with passage of the TCPA. Private suits under the TCPA do not fall into the narrow ambit of causes of action over which state courts have exclusive jurisdiction even if the requirements of diversity are met. *Cf. Colo. River*, 424 U.S. at 817 (noting the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them"). These suits concern domestic relations – divorce, alimony, and child custody – and are confined to the state courts because of their highly localized nature and because of the primacy of states' interest in these matters. The TCPA, by contrast, does not regulate an area of the law characterized by deep-seated historical deference to state courts and state policy. *Cf. Ankenbrandt*, 504 U.S. at 704 ("[S]tate courts are more eminently suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees.").

jurisdiction under § 1332 over TCPA claims. Since diversity jurisdiction is not explicitly abrogated, it will only be found lacking if the "diversity jurisdiction statute and the TCPA are 'irreconcilable.'" *U.S. Fax Law Ctr.*, 476 F.3d at 1117 (citing *Colo. River*, 424 U.S. at 808). *See also Hagan*, 570 F.3d at 155 ("'An implied repeal will only be found where provisions in two statutes are in irreconcilable conflict, or where the latter act covers the whole subject area of the earlier one and is clearly intended as a substitute.'") (quoting *Branch v. Smith*, 538 U.S. 254 (2003) (internal citations and quotation marks omitted)).

The diversity jurisdiction statute and the TCPA are not irreconcilable. Though federally established, the TCPA essentially operates like a state law. By providing a federal law to counteract evasion of state law across state lines, Congress "sought to put the TCPA on the same footing as state law, essentially supplementing state law where there were perceived jurisdictional gaps." *Gottlieb*, 436 F.3d at 342. In *ErieNet*, we noted that the "mere need for federal legislation and provision of remedies does not give a right of access to a federal forum," 156 F.3d at 517;[20] nor does a

_____

[20]Though the interstitial role of the TCPA does not suggest a clearly identifiable federal interest that would provide a basis for federal question jurisdiction, the TCPA's text and history also do not reflect the kind of clearly exclusive, localized concerns that are at the heart of domestic relations statutes or statutes like the TIA and the Johnson Act, *see supra*, which do not allow for diversity jurisdiction. *See Accounting Outsourcing*, 294 F. Supp. 2d at 840 ("Unlike matters involving taxes and public utilities, matters involving fax transmission can hardly be deemed 'traditionally regulated'

36

federal law's gap-filling function or its operation alongside state law *remove* the action from federal court entirely. We agree with the Second Circuit that, "[i]nsofar as Congress sought, via the TCPA, to enact the functional equivalent of state law that was beyond the jurisdiction of a state to enact, it would be odd to conclude that Congress intended that statute to be treated differently, for purposes of diversity jurisdiction, than any other state statute." 436 F.3d at 342.

Not only are the TCPA and the diversity statute compatible, but it is actually the "*eliminat[ion]* [of] diversity jurisdiction over TCPA claims" that would produce anomalous results. *U.S. Fax Law Ctr.*, 476 F.3d at 1117 (emphasis in original). Indeed, interpreting the TCPA to vest exclusive jurisdiction in state courts would mean that "'state law claims based on unlawful telephone calls could be brought in federal court, while federal TCPA claims based on those same calls could be heard only in state court.'" *Id.* (quoting *Kinder v. Citibank*, No. 99-CV-2500, 2000 WL 1409762, at \*4 (S.D. Cal. Sept. 14, 2000)). *See also Gottlieb*, 436 F.3d at 342 ("The reasoning of those district courts that have noted the anomaly that would result if a plaintiff alleging a state-law cause of action for unauthorized telemarketing could sue in federal court on the basis of diversity jurisdiction but a TCPA plaintiff could not do so is . . . persuasive.") (citing *Kinder*, 2000 WL 1409762, at \*4). Bifurcating related cases would "promote a needless waste of resources through duplicative discovery and motion practice, and would create the possibility of conflicting factual findings

---

by the states."). It is thus coherent to conclude that the TCPA produces neither federal question jurisdiction nor exclusive state court jurisdiction.

and legal holdings." *Watson*, 462 F. Supp. 2d at 646. In addition, finding exclusive state court jurisdiction under the TCPA would bar the federal courts from exercising supplemental jurisdiction under 28 U.S.C. § 1367 over TCPA claims: "[W]here a federal court exercised federal question jurisdiction over a claim involving other provisions of the Communications Act or diversity jurisdiction over a claim under a parallel state statute, it could not hear a related TCPA claim." 436 F.3d at 342. Without a clear statement from Congress precluding the exercise of supplemental jurisdiction over TCPA claims we are unwilling to so interfere with this established and independent basis of jurisdiction. *See Watson*, 462 F. Supp. 2d at 646 ("To interpret *ErieNet* to foreclose supplemental jurisdiction would produce a result that is unsupported by the language and the intent of the TCPA, and is inconsistent with the purpose of supplemental jurisdiction.").

Other impermissible consequences could also flow from the elimination of diversity jurisdiction. We note the possibility that, in the absence of diversity jurisdiction under § 1332, a plaintiff who had received unsolicited faxes could entirely lose his right to file a private TCPA claim. The language in the TCPA providing that a plaintiff may bring suit in state court "if otherwise permitted by the laws or rules of a State" suggests that, without diversity jurisdiction in federal courts, a plaintiff "could be without any venue to file his claim if a state opted out of the TCPA." *U.S. Fax Law Ctr.*, 476 F.3d at 1117 ("'[I]f otherwise permitted by the laws or rules of a court of a State' implies that federal [question or diversity] jurisdiction . . . is available; otherwise where would victims go if a state elected not to entertain these suits?") (citing *Brill*, 427 F.3d at 751)).

Finally, we recognize that, on a practical level, Congress probably did not anticipate a circumstance in which a conflict between § 1332 and § 227(b)(3) would arise. Indeed, Congress set the statutory damages for individual TCPA claims at $500, a figure substantially lower than the $75,000 diversity jurisdiction bar. We have little doubt that in designing a statute to provide relief to aggrieved recipients of unsolicited faxes, Congress expected that these individuals would sue in state court and did not want federal court to be bothered with their claims. However, as the Second Circuit concluded, "Congress's failure to foresee a circumstance in which diversity jurisdiction could be invoked does not serve as a barrier to federal jurisdiction in the absence of a clear statement to divest the federal courts of diversity jurisdiction." *Gottlieb*, 436 F.3d at 343.[21] Congress has given no indication that when litigants can aggregate their claims to add up to $75,000, or file as a class to reach CAFA's $5 million requirement, it intended that these claims be barred from federal court.[22] Its failure to anticipate this

---

[21]*See also Charvat*, 630 F.3d at 464 (interpreting § 227(b)(3) to "suggest that Congress anticipated that the Act would be privately enforced primarily in state court" but concluding that this does not "establish that such claims may proceed only in state court – that state court jurisdiction is exclusive").

[22]The availability under § 227(f) of a cause of action brought by the state in federal court on behalf of its citizens does not act as a substitute for these aggregated claims; firstly, a *parens patriae* case brought by a state under § 227(f) does not provide the individual compensation provided for by § 227(b)(3)'s private cause of action and, secondly, as we noted

circumstance does not signal or predict its intent now that the circumstance has arisen. To conclude otherwise is to enter the realm of speculation. We would prefer to let Congress speak for itself. As it stands, the TCPA does not direct us to treat diversity jurisdiction any differently than we normally would, and the litigants present no argument for why we should disrupt the standard premise that a federal forum is available for completely diverse parties where the amount in controversy is $75,000 or more and for minimally diverse parties where the amount is $5 million or more.

In holding that we have diversity jurisdiction over individual TCPA claims, we join a majority of courts of appeals and district courts that have considered or addressed the issue. *See Gottlieb*, 436 F.3d 335; *U.S. Fax Law Ctr.*, 476 F.3d at 1117 (following *Gottlieb* in concluding that, "absent an explicit indication that Congress intended to create an exception to diversity jurisdiction, one may not be created by implication" and finding no such explicit indication in the TCPA); *Gene & Gene LLC v. Biopay LLC*, 541 F.3d 318, 324-25 (5th Cir. 2008) (concluding without specific analysis of the diversity jurisdiction question that, because the requirements of CAFA were met, it has diversity jurisdiction over aggregated CAFA claims: "[Regardless of federal question jurisdiction,] subject-matter jurisdiction, in any event, is proper under provisions of CAFA."); *Klein,* 399 F. Supp. 2d at 533-34; *Watson*, 462 F. Supp. 2d at 647; *Kopff*, 298 F. Supp. 2d at 55; *Charvat*, 703 F. Supp. 2d at 739 n.1;

in *ErieNet,* "the sheer number of calls made each day-more than 18,000,000-would make it impossible for government entities alone to completely or effectively supervise this activity." 156 F.3d at 515.

40

*Accounting Outsourcing*, 294 F. Supp. 2d at 839-40. We conclude that neither the TCPA itself nor our decision in *ErieNet* precludes district courts from hearing TCPA claims where an independent basis for federal jurisdiction, like diversity or supplemental jurisdiction, exists. Federal question and diversity are distinct jurisdictional bases; at least in the context of the TCPA, the existence or non-existence of one jurisdictional basis does not affect the existence of the other. As we read the TCPA, there is nothing in the statute itself – or suggested by its legislative history – that provides a basis for federal jurisdiction and, at the same time, there is nothing in it that deprives federal courts from hearing TCPA claims where independent grounds for jurisdiction exist. A federal cause of action that gives rise to § 1332, but not § 1331, jurisdiction is indeed rare, *Gottlieb*, 346 F.3d at 342 n. 8, but it would defy congressional intent as expressed in the TCPA's text and statutory scheme not to endorse this unique jurisdictional framework.

F.

The *Landsman* District Court did not base its dismissal on the unavailability of diversity jurisdiction over private TCPA claims. It correctly noted that there could be diversity jurisdiction under the TCPA, largely based on its understanding that our ruling in *ErieNet* was confined to federal question jurisdiction.[23] However, the District Court

_____

[23]*Landsman* also acknowledged that plaintiffs satisfied the three basic requirements of § 1332(d): that the class have at least 100 members, that there exist minimal diversity between the parties (Landsman is a New York citizen, and Skinder-Strauss a New Jersey citizen), and that the amount in

41

then went on to examine state law, deeming state law "with respect to the TCPA" to be "substantive" under *Erie* and conducting a choice-of-law analysis between New York and New Jersey law.[24]   *See Erie*, 304 U.S. 64.   The Court appeared to believe that *Erie* controlled – and required a choice-of-law analysis – since the issue before the court in a diversity case necessarily involves a choice among state laws. The Court reached the conclusion that New York law would apply, and because New York does not permit class claims seeking aggregated statutory damages,[25] plaintiffs could not

---

controversy be at least $5 million (the complaint alleged that defendant sent over 10,000 faxes, and the damages for each fax are $500).

[24]Citing our decision in *Chin v. Chrysler LLC*, 538 F.3d 272, 278 (3d Cir. 2008), the *Landsman* Court decided that, in diversity cases, it must first determine whether a "matter" is procedural or substantive; substantive "matters" require a choice-of-law analysis.   Concluding that "no law could be more substantive than" CPLR § 901(b), since it "would foreclose the possibility of this Court having jurisdiction," 636 F. Supp. 2d at 364, it performed a choice-of-law analysis to decide whether the substantive law of New Jersey or New York should apply.

[25]New York's Civil Practice Law and Rules ("CPLR") § 901(b) states the following:

> Unless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, *an action to recover a* penalty, or *minimum*

possibly have damages that would satisfy the $5 million amount-in-controversy requirement under CAFA. Accordingly, the District Court found that it could not exercise diversity jurisdiction over the case and granted defendant's motion to dismiss.

We conclude that the *Landsman* Court's reasoning missed the mark. Because plaintiffs were proceeding under federal, not state, law – namely, the federal TCPA – there was no need for choice-of-law analysis under *Erie*.[26] Furthermore, even if the fact that the TCPA is a federal statute were not determinative, under *Shady Grove Orthopedic Ass'n, P.A. v. Allstate Insurance Co.*, --- U.S. ---, 130 S. Ct. 1431 (2010), federal law regarding class actions would be applied in federal courts, not state law. Rule 23, not § 901(b), controls this TCPA class action, and plaintiff is thus authorized to maintain a class action as long as Rule 23's

---

> *measure of recovery created or imposed by statute may not be maintained as a class action*.

C.P.L.R. § 901(b) (emphasis added).

[26]*See Erie*, 304 U.S. at 78 ("*Except in matters governed by the Federal Constitution or by acts of Congress*, the law to be applied in any case is the law of the state.") (emphasis added); *supra* n.10 (noting that *Erie*'s directive to apply state substantive law and federal procedural law in diversity cases is only applicable where state law causes of action are at issue).

prerequisites are met.[27]  The *Landsman* District Court and the *Flierware* District Court, which adopted *Landsman*'s

---

[27]In *Shady Grove*, the Supreme Court held that § 901(b) "cannot apply in diversity suits" in federal court; rather, Rule 23 controls.  130 S. Ct. at 1437.  The only exception is when Congress has explicitly "carved out . . . federal claims . . . from Rule 23's reach," *id.* at 1428, which is not the case here. Indeed, we do not interpret § 227(b)(3)'s "if otherwise permitted by laws or rules of court of a State" language to carve out TCPA claims from Rule 23's ambit; we agree with Justice Scalia that reading § 227(b)(3) to require deference to state class action law would mean that the TCPA "effect[ed] an implied partial repeal of the Rules Enabling Act," and "would require federal courts to enforce any prerequisite to suit state law makes mandatory—a state rule limiting the length of the complaint, for example." *Holster v. Gatco, Inc.*, 130 S. Ct. 1575, 1575-76 (2010) (Mem. granting petition for writ of certiorari, vacating judgment and remanding to the Second Circuit) (Scalia, J., concurring).  "A more probable" reading of this language "is that when a State closes its doors to claims under the Act § 227(b)(3) requires federal courts in the State to do so as well."  *Id.* at 1576.  This language deals with the threshold requirement of where and when TCPA suits can be brought.  It basically authorizes a state to keep these claims out of state court, *see Brill*, 427 F.3d at 451; *Int'l Sci.*, 105 F.3d at 1156, but it does not explicitly require the application of state law or direct federal courts to defer to state law in deciding whether a class action can be maintained.  Such a clear statement from Congress would be needed for TCPA claims to fall under the exception articulated in *Shady Grove*.  Further, the *Shady Grove* plurality objected to treating § 901(b) as a substantive law,

44

reasoning on this point, erred in finding that New York's § 901(b) applies here to preclude a TCPA class action. Since plaintiffs have met § 1332(d)'s requirements, the District Courts can exercise diversity jurisdiction over their claims. The only remaining question, then, is whether Rule 23 was satisfied.

## G.

The *Afgo* District Court took a different tack than the *Landsman* Court, but we also disagree with its approach. As was the case in *Landsman*, the *Afgo* court presumed the case could proceed based on diversity, but reasoned that if a class could not be certified, then § 1332(d)'s amount in controversy could not be met. Accordingly, the Court set forth Rule 23's class certification requirements and determined that they were not fulfilled here.[28] As we have noted, *see supra*, Rule 23

since "it is not the substantive or procedural nature or purpose of the affected state law that matters, but the substantive or procedural nature of the Federal Rule." *Id.* at 1444. Because Rule 23 "regulates procedure," "it is authorized by [the Rules Enabling Act] and is valid in all jurisdictions, with respect to all claims, regardless of its incidental effect upon state-created rights." *Id.*

[28]Rule 23(a) requires that a plaintiff seeking class certification must establish four requirements: numerosity, commonality, typicality and adequacy of representation. Fed. R. Civ. P. 23(a). In addition, plaintiffs must meet one of the requirements of Rule 23(b). Rule 23(b) requires that one of the following conditions is met:

(1) prosecuting separate actions by or against individual class members would create a risk of:

    (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

    (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

    (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

    (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

    (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

does apply here.  However, delving into the propriety of class certification was the wrong focus at that early stage of the proceeding.

The *Afgo* Court held that, even with additional discovery, plaintiffs would not be able to fulfill Rule 23(a)(3)'s typicality requirement or any of Rule 23(b)'s requirements.[29]  Regarding both typicality and predominance, it explained that there were too many "crucial factual determinations to be made with respect to claims and defenses that will vary from party to party," in particular, consent to receive faxes and the existence of a prior business relationship with defendant.  2009 WL 2602200, at *5.  With respect to Rule 23(b)(1), the Court concluded that the claims of all potential plaintiffs were factually distinct enough that there would be no risk of inconsistent adjudications.  *Id.* Finally, it concluded that a class action was not a superior means of adjudicating this kind of controversy because the

---

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).  Goodrich alleged in its complaint that it meets Rule 23(b)(3)'s predominance and superiority requirements, under which a plaintiff must show that "questions of law or fact common to the members of the class predominate" over questions affecting only individual members and that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

[29]The *Flierware* Court did not conduct an independent analysis on the class certification question; it wholly adopted *Afgo*'s reasoning on this point.

individual recovery scheme contemplated by the TCPA – which allows individuals to recover $500 to $1500 per violation when their actual losses from receiving unwanted faxes are slight by comparison – already contains a punitive element that both deters potential violators and motivates individuals to file claims. *Id.* In fact, the *Afgo* Court reasoned, a class action would be an inferior means; an individual plaintiff who could have received damages quickly and without attorney's fees on her own would instead have to engage in protracted litigation and incur substantial legal fees that would reduce her recovery. *Id.*

*Afgo*'s class certification analysis – and *Flierware*'s adoption of it – are conclusory at best.[30] When the District Courts decided the class certification issue, there had been no motion for class certification and no discovery; whether the class could potentially fit within Rule 23 was determined on a motion to dismiss. This ruling was premature. To determine if the requirements of Rule 23 have been satisfied, a district court must conduct a "rigorous analysis." *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305, 309 (3d Cir. 2008). In doing so, a "court may 'delve beyond the pleadings to determine whether the requirements for class certification are satisfied.'" *Id.* at 316 (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 167 (3d Cir. 2001)). Particularly when a court considers predominance, it

---

[30]We note at the outset our agreement with plaintiff Landsman that this case is not among the rare few where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met. *See Rios v. State Farm Fire & Cas. Co.*, 469 F. Supp. 2d 727, 740 (S.D. Iowa 2007).

may have to venture into the territory of a claim's merits and evaluate the nature of the evidence. *Id.* at 310-11. In most cases, some level of discovery is essential to such an evaluation. In *Weiss v. Regal Collections*, 385 F.3d 337 (3d Cir. 2004), we emphasized the importance of discovery as part of the class certification process. "It seems appropriate," we said, "that the class action process should be able to 'play out' according to the directives of Rule 23 and should permit due deliberation by the parties and the court on the class certification issues." *Weiss*, 385 F.3d at 347-48 (footnote omitted). Accordingly, "[a]llowing time for limited discovery supporting certification motions may . . . be necessary for sound judicial administration." *Id.* at 347 n.17. These concerns were the basis for setting down a "rigorous analysis" requirement in *Hydrogen Peroxide*, where we recognized that changes in Rule 23 reflected the need "for a thorough evaluation of the Rule 23 factors." *Hydrogen Peroxide*, 552 F.3d at 318.

Further, in the specific context of claims filed under the TCPA statute, it is difficult to resolve without discovery whether there are factual issues regarding class members' business relationships with defendants or whether they consented to the receipt of faxes. *See Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 327-28 (5th Cir. 2008) (in discussing issues of commonality regarding consent, noting that "there are no invariable rules regarding the suitability of a particular case filed under [§ 227(b)(3)] of the TCPA for class treatment; the unique facts of each case generally will determine whether certification is proper"). Without discovery, the "unique facts" of this case, or any other, will not really be exposed. As the Fifth Circuit noted, differences among plaintiffs' consent may be defeated by common proof

49

developed in discovery. *See id.* at 327-28 (noting the possibility of presenting a "novel, class-wide means of establishing . . . lack of consent" on discovery – where the common question was whether inclusion of the recipients' fax numbers in a purchased database indicated their consent to receive faxes). The parties should have the opportunity to develop the record on this issue.

Furthermore, we believe that the *Afgo* Court's reasoning on many of the aspects of how the class might or might not pass muster under Rule 23 were conclusory and subject to debate. First, it is not clear that, as a matter of law, differences regarding consent are sufficient to defeat class certification. In *Hinman v. M & M Rental Center, Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008), the district court rejected the defendant's argument that considerations of consent and receipt of faxes are individualized questions so as to defeat class certification and noted that "commonality and typicality are generally met where, as here, a defendant engages in a standardized course of conduct vis-à-vis the class members, and plaintiffs' alleged injury arises out of the conduct." 545 F. Supp. 2d at 806-07 (citing *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)). The defendant had argued that, because the TCPA applies only to unsolicited faxes, individual analysis is required to determine whether each class member consented to transmission of the faxes in question. The court nonetheless found that the class members met Rule 23's commonality requirement. It pointed out that the defendant's fax broadcasts were transmitted *en masse* based on a "leads" list compiled several years earlier and that, under these circumstances, the consent question could be understood as a common question. "The possibility that some of the individuals on the list may separately have consented to the

50

transmissions at issue is an insufficient basis for denying certification." *Id.* at 807. *But see Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 404 (E.D. Pa. 1995) (denying certification of TCPA claim based on "inherently individualized" question of consent).

Second, the *Afgo* Court stated that a class action would not be a superior method of handling claims under the TCPA. We are not so sure this is correct.[31] The *Afgo* Court's suggestion that the individual statutory damages of $500 to $1500 are enough to both punish offenders and spur victims substitutes its judgment for that of Congress and makes unmerited presumptions regarding deterrence and the motivation to litigate. Had Congress wanted to preclude aggregation of individual TCPA claims, it could have so provided in the TCPA itself or in CAFA, which specifically lists certain types of statutory claims that could not be brought as class actions. 28 U.S.C. § 1332(d). CAFA lists various other statutes, but not the TCPA. Moreover, although nuisance faxes are not the most egregious of wrongs policed by Congress, the District Court was speculating when it assumed that individual suits would deter large commercial entities as effectively as aggregated class actions and that individuals would be as motivated – or even more motivated – to sue in the absence of the class action vehicle. The District Court should not have dismissed out of hand the possibility that a class action could provide a superior method

---

[31]The *Afgo* Court also states, without citation, that New Jersey law would govern the substantive aspects of a TCPA case brought under a federal court's diversity jurisdiction and that New Jersey would not permit class actions in a case such as this. As we noted above, this is neither relevant nor correct.

of "fairly and efficiently adjudicating the controversy," as required by Rule 23(b)(3). Although individual actions under the TCPA may be easier to bring in small claims court than other types of cases, that does not necessarily undermine the greater efficiency of adjudicating disputes involving 10,000 faxes as a single class action. Indeed, as plaintiffs point out, we have little reason to believe that individual actions are automatically efficient; plaintiffs can still face protracted litigation when they sue individually.

Finally, where common issues certainly exist, a district court might consider subclassing in lieu of decertification. The *Hinman* court, for example, noted the viability of defining the class to include only individuals who did not consent. "[B]y certifying a class of individuals who received unsolicited faxes," the court explained, it was "'merely setting the boundaries of the class' not resolving the substantive issues.'" *Hinman*, 545 F. Supp. at 807 (internal quotation marks and citation omitted). *See Chiang v. Veneman*, 385 F.3d 256, 268-69 (3d Cir. 2004) (rather than decertifying a class, choosing the "less drastic course" of "simply modify[ing] the class definition"); *Simer v. Rios*, 661 F.2d 655, 672 n.29 (7th Cir. 1981) ("[Decertification] ignores the possibility of subclassing, a viable alternative in resolving such problems.").

Discovery is necessary for the district court to conduct the "rigorous analysis" it is tasked with at this stage, and more than speculation and supposition is needed to say that any vehicle is really superior. A more robust record must be developed here as to the precise nature of the class claims. Accordingly, we will vacate the orders of the District Court

52

dismissing these three cases and remand for further proceedings consistent with this opinion.

**Landsman & Funk, P.C. v. Skinder-Strauss Associates et al.**
**Nos. 09-3105, 09-3532 & 09-3793**

McKEE, C.J., concurring:

The lead opinion persuasively explains why federal courts have diversity jurisdiction over claims arising from the private cause of action created under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b), and it relies on our prior decision in *ErieNet v. Velocity Net Inc.*, 156 F.3d 513 (3d Cir. 1998), to explain why the same is not true for federal question jurisdiction. I write separately because, although I agree that we have diversity jurisdiction to decide § 227(b) claims, I believe the very same rationale that leads to that result should lead us to conclude that we also have federal question jurisdiction over TCPA claims. *See* Lead Op. 28-41.

The *ErieNet* majority concluded that we do not have federal question jurisdiction over the private cause of action in § 227(b). Our former colleague, now-Justice Alito,[1] dissented. He argued that the text of the TCPA is insufficient to support the conclusion that Congress intended to deprive us of the federal question jurisdiction over the TCPA's private cause of action that we would otherwise have pursuant to 28 U.S.C. § 1331. He explained:

> [S]ection 227(b)(3) says nothing about the jurisdiction of the federal district courts; instead, it says merely that an action under that provision "may" be brought in an appropriate state court "if otherwise permitted by the laws or rules of a court of" that state. More than this . . . is needed to

---

[1] Inasmuch as he wrote his dissent in *ErieNet* while a member of this court, I will refer to Justice Alito as "Judge Alito" throughout my discussion of his analysis in *ErieNet*.

1

divest a federal district court of its
jurisdiction under section 1331.

*ErieNet*, 156 F.3d at 521 (Alito, J., dissenting).

Judge Alito believed that the *ErieNet* majority erred by focusing on whether the text of the TCPA reflected an intent to *allow* federal courts to exercise federal question jurisdiction over suits brought under that statute. He reasoned that the proper inquiry must start with the preexisting grant of federal question jurisdiction in § 1331 and then proceed to an examination of the pertinent text of the TCPA. Then, and only then, can we determine if that text is sufficiently explicit to *negate* the longstanding grant of jurisdiction contained in § 1331.

The Supreme Court has since vindicated Judge Alito's analytical approach. The Court has clarified that the jurisdictional inquiry must begin and end by examining whether the statutory text at issue is sufficient to reflect Congress's intent to abrogate § 1331's broad grant of federal question jurisdiction. The inquiry cannot begin by focusing on whether the Act in question confers federal jurisdiction. The lead opinion here notes that in *ErieNet*, "[w]e noted that subject matter jurisdiction must be conferred by statute and that the TCPA did not expressly do that." Lead Op. at 12. I agree that the TCPA does not confer jurisdiction. However, 28 U.S.C. § 1331 clearly does.

Today, we adopt Judge Alito's approach in inquiring into our diversity jurisdiction, but we leave *ErieNet*'s holding as to federal question jurisdiction in place. The lead opinion reminds us that, "[i]n *ErieNet* we asked whether Congress *conferred* subject-matter jurisdiction in the TCPA; here we ask whether Congress intended state courts to have exclusive jurisdiction over TCPA claims and, thus, *stripped away* diversity jurisdiction." *See* Lead Op. at 14.

I see no way we can ask that latter question when inquiring into our diversity jurisdiction while asking a very different question when inquiring into federal question

2

jurisdiction. The issue remains the same, subject matter jurisdiction, and the same question should be asked regarding federal question jurisdiction that we are asking about our diversity jurisdiction.

When the *ErieNet* majority posed the jurisdictional question there, it did not have the advantage of several subsequent Supreme Court decisions that undermine the majority's analysis. We now have the benefit of those decisions and they undermine the holding of *ErieNet.*

A.

Since *ErieNet*, the Supreme Court has decided three cases that illuminate the appropriate inquiry for determining when federal courts have jurisdiction.

In *Verizon Md., Inc. v. PSC*, 535 U.S. 635 (2002), the Supreme Court held that the Telecommunications Act of 1996 (the "TCA") did not remove federal question jurisdiction conferred under § 1331. A provision of the TCA required internet service providers ("ISPs") to enter into reciprocal compensation agreements by which their networks were open to competing ISPs. The regulatory scheme required state utility commissions to approve the terms of the agreements and contemplated that the agreements would require compensation being paid for non local or out-of-network calls. However, an issue arose over whether a new entrant into the market (WorldCom) had to pay reciprocal compensation to Verizon for local telephone calls that Verizon's customers placed to access the internet. Verizon claimed that WorldCom had to pay compensation because calls that connected a local customer to the internet were not "local" calls under the TCA. WorldCom disputed Verizon's claim and filed a complaint with the state utilities commission claiming that it was not obligated to compensate Verizon because the disputed calls were "nonlocal for purposes of reciprocal compensation," *Id.* at 640, and therefore not subject to the reciprocal compensation agreement between the two ISPs. The state commission ruled in favor of WorldCom and ordered Verizon to pay WorldCom the reciprocal

3

compensation owed under its reciprocal compensation agreement with Verizon.

Thereafter, Verizon brought an action in district court against the state commission, WorldCom, and other telecommunications carriers, arguing that the state commission's ruling that it must pay reciprocal compensation to World Com violated the TCA and a ruling of the FCC.[2] Verizon cited 47 U.S.C. § 252(e)(6) and 28 U.S.C. § 1331 as the basis of the court's jurisdiction.

Section 252(e)(6) of the TCA provides in part: "[i]n any case in which a State commission makes a determination under this section, any party aggrieved . . . may bring an action in an appropriate Federal district court to determine whether the agreement . . meets the requirements of . . . this [Act]." 47 U.S.C. § 252(e)(6). However, Verizon's suit involved "neither the approval or disapproval of a[n agreement] nor the approval or disapproval of . . . terms." *Id.* Accordingly, the district court dismissed the case for lack of federal jurisdiction, and a divided Court of Appeals for the Fourth Circuit affirmed.

The Supreme Court reversed, holding "even if § 252(e)(6) does not *confer* jurisdiction, it at least does not *divest* the district courts of their authority under 28 U.S.C. § 1331 to review the Commission's order for compliance with federal law." *Id.* at 642 (emphasis in original). The Court began its analysis by determining that "Verizon's claim [of federal preemption] . . . falls within 28 U.S.C. § 1331's general grant of jurisdiction . . . ." *Id.* at 643. It then determined that "nothing in 47 U.S.C. § 252 (e)(6) purports to strip this jurisdiction." *Id.* Rather, the Court found that § 252(e)(6) "merely makes *some other* actions by state commissions reviewable in federal court. This is not enough to eliminate jurisdiction under § 1331." *Id.* (emphasis in

---

[2] The FCC had ruled that the disputed calls were nonlocal "for purposes of reciprocal compensation but concluded that, absent a federal compensation mechanism for those calls state commissions could construe interconnection agreements as requiring compensation." *Id.* at 640

4

original).  The Court also found "none of the other provisions of the Act evince any intent to preclude federal review of a commission determination.  *If anything, they reinforce the conclusion that § 252(e)(6)'s silence on the subject leaves the jurisdictional grant of § 1331 untouched.*"  *Id.* at 644 (emphasis added).

The Court's decision in *Bruer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), is even more to the point.  There, Bruer sued his former employer, Jim's Concrete, under the Fair Labor Standards Act of 1938.  A section of that Act states that a suit under the Act "may be maintain[ed] . . . in any Federal or State court of competent jurisdiction." 29 U.S.C. § 216(b).  Bruer originally filed the case in state court, but Jim's Concrete attempted to remove the case to federal court.  Bruer objected, arguing that the Act's provision that the suit "may be . . . maintain[ed] . . . in any federal or State court" deprived federal courts of removal jurisdiction.

A unanimous Supreme Court rejected the notion that removal was improper under the text of the statute. The Court again began by assuming federal removal jurisdiction existed and noting that "[n]othing on the face of [29 U.S.C.] § 216(b) looks like an express prohibition of removal [jurisdiction] . . . ." *Bruer*, 538 U.S. at 694.  It noted that Congress's use of "maintain" was ambiguous and the fact that Congress stated that an action under the Act could be maintained in either federal or state court was therefore not sufficient to unambiguously establish congressional intent to divest federal removal jurisdiction.  *See id.* at 695-96.

Most recently, in *Whitman v. Dept. of Transportation*, 547 U.S. 512 (2006), the Supreme Court, in a per curium opinion, explicitly rejected the Ninth Circuit Court of Appeal's approach to determining whether federal courts have jurisdiction over cases arising from the Civil Service Reform Act ("CSRA").  The Court noted that "[t]he Court of Appeals was correct in concluding that 5 U.S.C. § 7121(a)(1) does not confer jurisdiction." However, that fact was not determinative because "[a]nother statute, . . . - a very familiar one - grants jurisdiction to the federal courts over 'all civil actions arising under the Constitution, laws, or treaties of the

United States.'" *Id.* at 513-514 (quoting 28 U.S.C. § 1331). The Court continued: "The question, then, is not whether 5 U.S.C. § 7121(a)(1) confers jurisdiction, but whether 5 U.S.C. § 7121 (or the CSRA as a whole) removes the jurisdiction given to the federal courts." *Id.* (citing *Verizon Md.*, *Inc.*, 535 U.S at 642).

Although these cases do not directly overturn *ErieNet*, they do clearly explain that our jurisdictional inquiry must begin with the general grant of federal jurisdiction found in Title 28 and then proceed to determining whether Congress has used language sufficiently specific to express an intent to divest federal courts of that pre-existing jurisdiction.

B.

In examining our diversity jurisdiction here, the lead opinion quite correctly notes, "Here, the specific provision granting subject matter jurisdiction to the federal courts is 28 U.S.C. § 1332(d) . . . ." Lead Op. at 16. It then proceeds to find that "[f]ederal courts only lack diversity jurisdiction where Congress has explicitly expressed an intent to strip federal courts of this jurisdiction . . . or where such jurisdiction is found to be irreconcilable with a congressional statute . . . ." *Id.* (citations omitted).[3] Then, because the lead opinion finds that the TCPA is completely silent on the issue of federal jurisdiction, it quite correctly concludes that diversity jurisdiction must exist. I agree.

---

[3] Judge Garth relies on statements of Senator Hollings to support his conclusion that Congress intended TCPA claims to be brought only in state courts. *See* Dissent at 4 & n2. I believe that the statements made by the bill's sponsor were best addressed by Judge Alto in his dissent in *ErieNet*. *See ErieNet*, 156 F.3d at 522 ("I do not believe that one speech given by one senator is sufficient to demonstrate the 'unmistakable' intent of Congress. Moreover, even if Senator Hollings's statement were given controlling weight, it merely indicates that the TCPA was designed to '*allow* consumers to bring an action in State court.'" (emphasis in original).

However, I depart from the lead opinion's decision to reaffirm the holding of *ErieNet*. The lead opinion concludes that the TCPA is one of those "rare" congressional acts that deprives federal courts of federal question jurisdiction but not federal diversity jurisdiction. Lead Op. at 23. (*citing Gottlieb*, 436 F.3d at 342 n.8). Indeed, the Supreme Court has recently noted that federally created causes of actions that do not result in federal question jurisdiction are "extremely rare," citing a more than 110-year-old case as an example. *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 317 n.5, 125 S.Ct. 2363, 2370 n.5 (2005) (*citing Shoshone Mining Co. v. Rutter*, 177 U.S. 505, 20 S.Ct. 726 (1900)).[4]

In justifying its differing analysis here and reaffirming the holding in *ErieNet*, the lead opinion attempts to distinguish federal question jurisdiction from diversity jurisdiction by insisting that "as our focus in *ErieNet* demonstrates, congressional intent is a touchstone of federal question jurisdiction analysis." Lead Op. at 25. Indeed it is, but it is the touchstone for determining both our diversity jurisdiction and federal question jurisdiction.

---

[4] *Shoshone* was a 1900 suit involving disputed title to a mine. 177 U.S. 505. The Court held that there was no federal question jurisdiction even though the suit in support of an adverse claim to a mine arose out of a federal statute. The Court reasoned that Congress designed the federal system in such a way that "the great bulk of litigation respecting rights to property, although those rights may . . . go back to some law of the United States, is in fact carried on in the courts of the several states." *Id.* at 507.

However, suits under the TCPA do not involve the kind of local interests that have historically been left to the states. Rather, the TCPA is an attempt to regulate an instrumentality of interstate commerce. As the lead opinion notes, the legislative history of that Act refers to "the need for federal regulation to fill the gaps between individual states' regulatory efforts, since [s]tates do not have the jurisdiction to protect their citizens against those who use [automated dialing] machines to place interstate telephone calls." Lead Op. at 9 (quoting S. Re. No. 102-178, at 5) (internal quotation marks omitted, brackets in original).

7

The real reason that the lead opinion finds that we have diversity jurisdiction here while preserving *ErieNet*'s conclusion that we lack subject matter jurisdiction is its analysis of diversity jurisdiction rests upon a very different foundation than the *ErieNet* conclusion regarding federal question jurisdiction. Here, the lead opinion correctly asks whether the TCPA abrogates jurisdiction already conferred by § 1332, yet it preserves *ErieNet*, which improperly asked whether the TCPA confers jurisdiction itself, ignoring the grant of jurisdiction under § 1331. The opposing analytical approaches are outcome determinative, just as Judge Alito suggested in his *ErieNet* dissent. *See* 156 F.3d at 521-22. Moreover, "'[i]t is true . . . of journeys in the law that the place you reach depends on the direction you are taking. And so, where one comes out on a case depends on where one goes in.'" *United States v. Sigal*, 341 F.2d 837, 844 & n.24 (3d Cir. 1965) (quoting *United States v. Rabinowitz*, 339 U.S. 56, 69 (1950) (Frankfurter, J. dissenting)).

If we begin our analysis at the correct starting point, we would come out exactly where Judge Alito argued that we should in his *ErieNet* dissent. The private right of action under the TCPA unquestionably falls within § 1331's general grant of federal question jurisdiction. There is nothing in the TCPA that purports to strip that jurisdiction away, and the lead opinion here alludes to nothing that would accomplish that result. As the *ErieNet* majority recognized, neither the text of the statute nor the legislative history of the TCPA refers to federal courts at all. 156 F.3d at 516. This complete absence of expression simply cannot be woven into the clear expression of congressional intent required to entirely remove federal jurisdiction. *See Verizon*, 535 U.S. at 644.

C.

I am not alone in concluding that intervening Supreme Court decisions have undermined *ErieNet*'s analytical framework. The Court of Appeals for the Seventh Circuit has noted that *ErieNet* and other decisions in the other Courts of Appeals that have found that federal courts do not have jurisdiction over cases involving the TCPA, "cannot be

reconciled with" recent Supreme Court decisions, including *Bruer*. *Brill*, 427 F.3d at 450.

More recently, in *Charvat v. Echostar Satellite, LLC*, 630 F.3d 459 (6th Cir. 2010), the Court of Appeals for the Sixth Circuit reversed its previous stance that there was no federal question jurisdiction under the TCPA, and concluded that intervening Supreme Court decisions undermined its previous analysis. The court noted that Congress had elsewhere in the TCPA created "exclusive federal jurisdiction over Telephone Act claims brought by state attorneys general." 630 F.3d at 464 (citing 47 U.S.C.§ 227(F)(2)). The court reasoned that Congress therefore clearly knew how to use language that would create exclusive jurisdiction in a given forum, yet it had not otherwise done so. Rather, Congress had merely stated that the private cause of action created in § 227 *could* be brought in state courts.[5] The court examined provisions of the statute that permit suits to be brought in state courts and concluded that they were not sufficient to divest federal question jurisdiction: "These provisions may suggest that Congress anticipated that the Act would be privately enforced primarily in state court. But they do not establish that such claims may proceed only in state court—that state court jurisdiction is exclusive. Otherwise, the Act would preclude even federal—diversity jurisdiction." *Id.* at 464 (citing 28 U.S.C. § 1332).

**Conclusion**

---

[5] In his dissenting opinion, Judge Garth reasons that Congress's use of "may" in the TCPA simply reflects the fact that "a litigant is not required to bring an action, but if he chooses to do so, he must comply with certain requirements." Dissent at 10. However, no aggrieved party is ever required to bring a lawsuit, and I am therefore not convinced that the permissive wording of the TCPA can be explained as Judge Garth suggests. I do not believe that Congress thought it necessary to tell aggrieved parties that they need not bring a lawsuit unless they want to.

Today, we correctly hold that the TCPA does not preclude diversity jurisdiction. However, by allowing our decision in *ErieNet* to stand, we create two anomalies: First, we create an anomaly in our subject matter jurisdiction jurisprudence by using different analyses when determining whether there is diversity jurisdiction and federal question jurisdiction. Second, we create a situation whereby individual plaintiffs can bring a claim under a federally created cause of action in federal court only when the requirements of diversity jurisdiction are satisfied, but plaintiffs who cannot satisfy those requirements must sue under a federal statute in state court.

I believe that our analysis with regard to diversity jurisdiction is equally applicable to federal question jurisdiction. We should have used this opportunity to correct the mistake we make in our analysis in *ErieNet*, and I regret that we are not taking this opportunity to say so.

**Landsman & Funk PC v. Skinder-Strauss Associates et al.**
**Nos. 09-3105, 09-3532 & 09-3793**

GARTH, *Circuit Judge*, dissenting:

The sole issue on this appeal is whether the Federal courts have jurisdiction to hear claims asserted under the Telephone Consumer Protection Act, 47 U.S.C. § 227. My colleagues claim they do. Because I would hold the District Courts' judgments lacked any source of jurisdiction over the plaintiffs' claims -- either federal-question jurisdiction (28 U.S.C. § 1331) or diversity jurisdiction (28 U.S.C. § 1332) -- I am obliged to dissent from Judge Rendell's opinion, and I disagree with Chief Judge McKee's separate opinion.[1] I would affirm the dismissal of the complaint in each of the three cases under review.

**I.**

The Telephone Consumer Protection Act (TCPA) prohibits certain uses of telephone equipment. In particular, it prohibits the use of any device to send an unsolicited advertisement in the form of a fax, except under certain circumstances to a recipient with whom the sender has an established business relationship. 47 U.S.C. § 227(b)(1)(C). The TCPA creates a private right of action for persons aggrieved by statutory violations. In relevant part, 47 U.S.C. § 227(b)(3) reads:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate *court of that*

---

[1] Judge Rendell believes there is no federal-question § 1331 jurisdiction, but there is diversity § 1332 jurisdiction.

Chief Judge McKee would hold that there is both federal-question § 1331 jurisdiction and diversity § 1332 jurisdiction.

I would hold that there is no federal-question § 1331 jurisdiction, nor is there diversity § 1332 jurisdiction.

*State* [a private claim under the TCPA].

(Emphasis added.)  Recipients of faxes sent in violation of the TCPA are entitled to an injunction against further violations, and to damages equal to an amount of the greater of their actual losses or $500 for each violation.  Id. § 227(b)(3).

I emphasize at the outset our obligation to interpret specific and unambiguous provisions of a statute in a manner consistent with their plain meaning.  United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989); Lawrence v. City of Philadelphia, 527 F.3d 299, 316–17 (3d Cir. 2008).   In construing the meaning of a statute, we are required to look first to the statute's plain meaning, Kaufman v. Allstate N.J. Ins. Co., 561 F.3d 144, 155 (3d Cir. 2009), as evidenced by "'the ordinary meaning of the words used,'" United States v. Doe, 564 F.3d 305, 310 (3d Cir. 2009) (quoting United States v. Geiser, 527 F.3d 288, 294 (3d Cir. 2008)).  We have been instructed to begin with the text of a provision and, if its meaning is clear, end there.

It is therefore clear to me that where Congress deliberately has designated the "courts of that State" as the forum for all claims of TCPA violations, we have no alternative but to comply with that dictate and hold that Federal courts may not entertain such claims, either by virtue of  federal-question § 1331 jurisdiction, see ErieNet, Inc. v. Velocity Net, Inc., 156 F.3d 513 (3d Cir. 1998), or by virtue of diversity § 1332 jurisdiction.

**II.**

*A.   ErieNet remains viable as a precedent.*

In September 1998, my colleague Judge Rendell and I constituted a majority of this court's panel holding that 28 U.S.C. § 1331, which endows the district courts with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," did not permit Federal courts to hear TCPA claims.  ErieNet, 156 F.3d 513.  Although acknowledging that "Congress could have more clearly expressed its intent in the TCPA to decline

2

to provide jurisdiction for these consumer suits in district court," we held: "To find federal court jurisdiction here would not only be contrary to the clear intent of Congress, but also would represent a departure from well-established principles reflecting a reluctance to find federal jurisdiction unless it is clearly provided for." Id. at 519.

In an earlier portion of that opinion, where we concluded that the TCPA did not itself confer jurisdiction on Federal courts, we examined the text of § 227(b)(3). We reasoned that "[t]he permissive authorization of jurisdiction in state courts does not imply that jurisdiction is also authorized in federal courts," and concluded that the fora for such claims were exclusively the state courts, because "the most natural reading of this language is that Congress intended to authorize private causes of action only in state courts, and to withhold federal jurisdiction." Id. at 516-17.

We also were influenced by the statement of the TCPA's chief legislative sponsor, Senator Hollings,[2] which reflected an intent that TCPA claims be brought in state court, id. at 515, and for an obvious reason – the penalty for violating TCPA was $500, far below the $75,000 amount which must be disputed to invoke a Federal court's diversity jurisdiction. We recognized that the remedy sought by a consumer would be brought in a State's small claims court. Finally, we observed that some other sections of the statute expressly provided for concurrent jurisdiction in the Federal courts, and suggested that the absence of a similar provision in § 227(b)(3) was "significant." Id. at 517.

ErieNet thus held that § 1331 does not confer Federal jurisdiction over TCPA claims on the Federal courts, and has not since been overruled. And although Judge Rendell's opinion tries to explain away ErieNet by noting that the ErieNet parties only sought federal-question jurisdiction, it cannot ignore the unequivocal language of our opinion and holding. ErieNet categorically discounted *all* forms of Federal jurisdiction. We emphatically stated:

---

[2] Sen. Hollings's statement is neither questioned nor contradicted by any other Senator's.

3

- "Congress intended that private enforcement suits under the TCPA be brought in state, and not federal, courts." Id. at 516.

- "The most natural reading [of § 227(b)(3)] is that Congress intended to authorize private causes of action *only* in state courts, and to withhold federal jurisdiction." Id. at 517.

- "'[T]he clear thrust of [Senator Hollings'] statement was consistent with the bill's text that state courts were the intended fora for private TCPA actions.'" Id. (quoting Int'l Sci. & Tech. Inst., Inc. v. Inacom Commc'ns, Inc., 106 F.3d 1146, 1153 (4th Cir. 1997)).

- "[T]he explicit reference to state courts, and the absence of any reference to federal courts, reflects Congress' intent to withhold jurisdiction over such consumer suits in federal court." Id.

- "To find federal jurisdiction here would not only be contrary to the clear intent of Congress, but would also represent a departure from well-established principles reflecting a reluctance to find federal jurisdiction unless it is clearly provided for." Id. at 519.

- "[T]he TCPA reflects Congress' intent to authorize consumer suits in state courts only . . . ." Id.

- "Congress intended to refer private litigants under the TCPA to state court . . . ." Id. at 520.

It must be emphasized that by holding that there was no Federal jurisdiction, we were not referring to federal-question § 1331 jurisdiction alone, but we were referring to Federal jurisdiction as a whole. That whole includes diversity § 1332 jurisdiction.

**III.**
**The Federal Courts Have No Diversity Jurisdiction Over TCPA Claims**

Judge Rendell now seeks to explain away our <u>ErieNet</u> opinion and to limit its reach, its reasoning, and its carefully chosen language to apply to just federal-question jurisdiction. In doing so, Judge Rendell's opinion now disclaims its all-inclusive doctrine of jurisdiction despite our Court having approved the <u>ErieNet</u> opinion on circulation. <u>ErieNet</u> was circulated to our entire Court pursuant to our internal procedures, and was approved by the entire Court, other than the dissenting Judge in <u>ErieNet</u>.[3] Under our principles, standards, and culture, unless an opinion of our Court is overruled either by the Supreme Court or by an *en banc* of our Court, it remains as a steadfast precedent and binds all subsequent panels, including this panel. <u>See</u> 3d Cir. Internal Operating P. 9.1. As a consequence, with no Federal jurisdiction available to adjudicate their claims, appellants have now argued that diversity § 1332 jurisdiction permits the Federal courts to hear their claims under the TCPA.

I respectfully disagree.

*A.     Federal Courts Cannot Presume Jurisdiction Unless Congress Has Granted It.*

As a court of limited jurisdiction, we do not presume jurisdiction where it has not been otherwise divested, but rather, may only entertain a case if Congress given us jurisdiction to hear it. <u>Bowles v. Russell</u>, 551 U.S. 205, 212-13 (2007); <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994); <u>Ankenbrandt v. Richards</u>, 504 U.S. 689, 697-98 (1992) ) (citing, among other cases, <u>Cary v. Curtis</u>, 44 U.S. 236, 245 (1845); <u>Bender v. Williamsport Area Sch. Dist.</u>, 475 U.S. 534, 541 (1986) (citing <u>Marbury v. Madison</u>, 5 U.S. 137, 173-180 (1803)); <u>Owen Equip. & Erection Co. v. Kroger</u>, 437 U.S. 365, 372 (1978); <u>Kline v. Burke Const. Co.</u>, 260 U.S. 226, 233-34 (1922); <u>Sheldon v. Sill</u>, 49 U.S. 441, 448-49 (1850); <u>United States ex rel.</u>

---

[3] A petition for rehearing was denied by the Court. No Judge other than Judge Alito voted for rehearing.

Gittlemacker v. County of Philadelphia, 413 F.2d 84, 88 (3d Cir. 1969). That fundament of our jurisdiction rings as true today at it did in 1799, when the Supreme Court held that "[a] circuit court . . . is of limited jurisdiction . . . [a]nd the fair presumption is (not as with regard to a court of general jurisdiction unless the contrary appears, but rather) that a cause is without its jurisdiction, until the contrary appears." Turner v. Bank of N. Am., 4 U.S. 8, 10 (1799). And certainly when Congress has provided that such claims may only be heard in *state* courts, and not Federal courts, a court should be loath to impute jurisdiction that would confound and run contrary to the statutory language Congress has chosen. See Am. Fire & Cas. Co. v. Finn, 341 U.S. 6, 17-18 (1951) ("The jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation . . . .").

Judge Rendell's opinion, which relies upon diversity jurisdiction to accommodate the plaintiffs' claims under the TCPA, is flawed. "Diversity, like all federal jurisdiction, is limited in nature . . . ." Ramada Inns, Inc. v. Rosemount Mem'l Park Ass'n, 598 F.2d 1303, 1306 (3d Cir. 1979); see also, e.g., Loughlin v. United States, 393 F.3d 155, 171 (D.C. Cir. 2004) ("'Because federal courts are of limited jurisdiction, there is a presumption against the existence of diversity jurisdiction.'" (quoting Naartex Consulting Corp. v. Watt, 722 F.2d 779, 792 (D.C. Cir. 1983)); Bank One, Texas, N.A. v. Montle, 964 F.2d 48, 54 (1st Cir. 1992) (stating that finding of no jurisdiction "is consistent with the notion that federal courts are courts of limited jurisdiction and the corollary presumption against diversity jurisdiction"); Bishop v. Hendricks, 495 F.2d 289, 293 (4th Cir. 1974) (noting that "artificial creation of diversity" would "run counter to the general policy of viewing the federal courts as tribunals of limited jurisdiction whose subject matter jurisdiction principles should be applied with restraint" (citation and internal quotation marks omitted)). Thus, diversity jurisdiction is not available to parties in lawsuits involving federal statutes that specify and provide restrictions and requirements for jurisdiction. Congress, in §227(b)(3), provided that all *private* claims (which would include

diversity) be maintained in state courts, not Federal courts.[4] There is simply no basis on which a Federal court can conclude that its diversity jurisdiction is any less limited than other founts of Federal jurisdiction.

I admire Judge Rendell's historical analysis of diversity § 1332 jurisdiction. See Rendell op. at 17-28. Unfortunately, however, it has no application here, and is thus irrelevant because Congress has decreed that all cases under the TCPA are to be brought in state court. This being so, I see no point in discussing the history of diversity jurisdiction.

*B.* *Jurisdiction over TCPA claims is exclusive in the state courts.*

Section 227(b)(3) is the only provision of the TCPA that addresses the remedy available to a private party who has received an unsolicited fax in violation of the statute. Congress imposed two key constraints on the availability of a forum for such a claim.[5]

Under Congress's explicit language, the cause of action must be *both* (1) "permitted by the laws or rules of court of a State" *and* (2) "[brought] in an appropriate court of that State."

The only reading of this language that is faithful to Congress's intent is that a private party may sue *only* in state court. By referring to a "court *of* a State" and a "court *of* that

---

[4] In Gottlieb v. Carnival Corp., 436 F.3d 335, 340 (2d Cir. 2006), the reasoning and holding of which Judge Rendell relies on heavily, the Second Circuit inexplicably deviated from established precedent by concluding that "the better course" would be to assume that "§ 1332 applies to all causes of action, whether created by a state or federal law, unless Congress expresses a clear intent to the contrary."

[5] As noted earlier, § 227(b)(3) provides: "A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State" a private claim under the TCPA.

State," Congress was referring to state courts, not to Federal courts. The basic definitions of the word "of" include "[d]erived or coming from," "[b]elonging or connected to," and "issuing from." *Webster's II University Dictionary* (1988). A court that is "of" a State must, therefore, be one whose power is derived from, belongs to, or is issued from, the State.

A Federal court, of course, possesses none of these properties; it is, instead, a court whose power is derived from the Federal government. A Federal district court merely happens to be located within the geographic boundaries of a State, and is not "of" that State. Thus, the District Court for the District of New Jersey cannot be said to be a "court of" New Jersey. Only the state courts of New Jersey satisfy that definition.[6] Hence, when the TCPA uses the words "court of that State" plainly and unambiguously, it unmistakably refers to a court which is part of a State's judicial system -- i.e., a state court.

That conclusion is not affected by the statute's use of the word "may" rather than "shall." Although "[t]he word 'may,' when used in a statute, usually implies some degree of discretion[,] . . . [t]his common-sense principle of statutory construction is by no means invariable, . . . and can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute." United States v. Rodgers, 461 U.S. 677, 706 (1983) (citations and footnote omitted). The plain meaning of this

---

[6] This reading of the statute is consistent with other Federal statutes and with case law. Federal statutes use the terms "courts of a State" and "courts of the State" to refer exclusively to state courts. See, e.g., 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ."); 28 U.S.C. § 1257(a) ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari . . . ."). Indeed, I have discovered no instance in which the phrase "court of a State" is used in a context that could possibly be read to include Federal courts.

term in this context is that a litigant is not required to bring an action, but if he chooses to do so, he must comply with certain requirements. Here, the text, purpose, and structure of § 227(b)(3) demonstrate that Congress intended to limit the private right of action to *state* courts, notwithstanding its use of the term "may." Thus, a claimant need not bring an action under the TCPA, but if he chooses to do so, he must bring it in state court.

Moreover, as we said in <u>ErieNet</u>, "[f]or Congress' reference to state courts to have any meaning," it must be that a private action under the TCPA may be brought only in state court. 156 F.3d at 517. By specifically referring to state courts, Congress was *directing* that those courts be the proper forum. Why else would they, and only they, be mentioned? Indeed, while Senator Hollings noted that Congress had not "dictated" *which* state court, Congress was clearly delineating state courts, as opposed to the Federal court.

### C. *Statements of Legislators*

Notwithstanding our observation in <u>ErieNet</u> that "Congress referred [TCPA] claims to state court *as forcefully as it could*, given the constitutional difficulties associated with Congress' mandating a resort to state courts," 156 F.3d at 516 (emphasis added), Judge Rendell and Chief Judge McKee now perceive ambiguity in that same congressional directive. I see no reason to depart from our holding in <u>ErieNet</u> that the language of the TCPA is plain and unambiguous, and requires a plaintiff's claim under the TCPA to be brought in a state -- not a Federal -- forum.

But even if the language were not so plain, it is telling that nowhere in the Congressional Record is there any implication or contemplation that *private* enforcement actions in the Federal courts were to be countenanced. Indeed, recognizing Sen. Hollings' concerns, it is apparent, as I noted earlier, that Congress wanted to make it easier for consumers to obtain damages from those who violate the bill. The Senator stated: "Small claims court, or a similar court, would allow the consumer to appear before the court without an attorney." 137 Cong. Rec. S16204, 16205. It is obvious to me, as it must have been to Sen. Hollings and his colleagues,

9

that Federal courts do not entertain "small claims," and that a consumer would likely retain counsel if the cause of action were to be pursued in Federal court.

Sen. Hollings was similarly aware of the disturbance caused to consumers by unsolicited faxes and telephone calls. He referred to patients in hospitals whose treatment might be interrupted by unsolicited calls, among others who would be the beneficiaries of this amendment. Accordingly, his amendment to the TCPA provided, in the same legislation, that any person who has received more than one telephone call within any twelve-month period by or on behalf of the same entity, in violation of the prescribed regulations, was permitted to bring in an appropriate "*court of that State*" an action which could result in $500 in damages, or if the violation was willful, an amount not more than $1500. Both the fax and the telephone provisions have amounts recoverable as damages in state court only. These statutory damages are far less than any diversity amount established by Congress for a Federal court's diversity jurisdiction.

### D. State Claims (47 U.S.C. § 227(f)(2)) as Distinct from Private Claims (47 U.S.C. § 227(b)(3)))

47 U.S.C. § 227(f)(2) provides that when a State, as distinct from a private claimant, brings an action under the TCPA, it must be brought in the Federal courts.

It is significant that when Sen. Hollings' amendment turned to the authority *of a State* to pursue violators, that section of the amendment to the TCPA directed that jurisdiction was exclusive in the Federal courts. See 47 U.S.C. § 227(f)(2). [7] It is evident that the Senate was keenly

---

[7] Section 227(f)(2) provides:

> The district courts of the United States, the United States courts of any territory, and the District Court for the District of Columbia shall have exclusive jurisdiction over all civil actions brought under this subsection ["Actions by

10

aware of both state and Federal jurisdictions, and had both in mind when it sorted them out for defined purposes: A consumer's private right of action had to be brought in *state* court; a State's cause of action had to be brought in *Federal* court.

What could be plainer or more unambiguous?

### E.    Sister Courts of Appeals

I acknowledge that other courts have held that diversity jurisdiction may exist notwithstanding the absence of federal-question jurisdiction.  See Gene & Gene, LLC v. BioPay, LLC, 541 F.3d 318, 325 n.6 (5th Cir. 2008); US Fax Law Ctr., Inc. v. iHire, Inc., 476 F.3d 1112, 117-18 (10th Cir. 2007); Gottlieb, 436 F.3d at 340-41; see also Charvat v. EchoStar Satellite, LLC, 630 F.3d 459, 464 (6th Cir. 2010) (holding, contra ErieNet and case law in five other circuits, that federal-question jurisdiction exists over TCPA claims); Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 450-51 (7th Cir. 2005) (holding that TCPA suits could be brought in Federal court under either § 1331 or § 1332, but noting that "if state jurisdiction really is 'exclusive,' then it knocks out § 1332 as well as § 1331").   However, I simply do not find the reasoning of these cases persuasive.

---

States"].        Upon      proper application, such courts shall also have jurisdiction to issue writs of mandamus, or orders affording like   relief,   commanding   the defendant to comply with the provisions of this section or regulations prescribed under this section, including the requirement that the defendant take such action as is necessary to remove the danger of such violation. Upon   a   proper   showing,   a permanent   or   temporary injunction or restraining order shall be granted without bond.

11

For example, in <u>Gottlieb</u>, the case on which Judge Rendell seeks to support her diversity theory, the Second Circuit acknowledged its own precedent, which, like <u>ErieNet</u>, concluded that Federal courts do not have § 1331 jurisdiction over TCPA claims. <u>See</u> <u>Foxhall Realty Law Offices, Inc. v. Telecomms. Premium Servs., Ltd.</u>, 156 F.3d 432 (2d Cir. 1998). The Second Circuit said, "Our discussion of 'exclusive jurisdiction' in <u>Foxhall</u> must be read in context. <u>Foxhall</u> dealt only with federal question jurisdiction; diversity jurisdiction was not raised in <u>Foxhall</u>." <u>Gottlieb</u>, 436 F.3d at 337. In an accompanying footnote, the court said: "Our use of the word 'exclusive' in <u>Foxhall</u> meant only that state courts have exclusive *substance-based* jurisdiction over private TCPA claims. <u>Foxhall</u> did not speak to the existence of citizenship-based, or diversity, jurisdiction." <u>Id.</u> at 337 n.3. With <u>Foxhall</u> thus distinguished, the court in <u>Gottlieb</u> went on to consider whether § 1332 provided a basis for jurisdiction, and concluded that it did, because "there is no clear statement of congressional intent to divest the federal courts of diversity jurisdiction over TCPA claims." <u>Id.</u> at 340-41.

I am not convinced, and I do not agree. Each of the considerations that led us in <u>ErieNet</u> (and the Second Circuit in <u>Foxhall</u>) to conclude that § 1331 jurisdiction is absent -- the statutory text's reference to state courts, the statement, motivation, and reasoning of the bill's legislative sponsor, etc. -- applies equally to the question of whether diversity jurisdiction exists. It simply does not make sense to say that Congress has made state-court jurisdiction "exclusive" with respect to one jurisdiction-conferring statute (§ 1331), but not the other (§ 1332).

Our holding in <u>ErieNet</u> that Federal courts lacked federal-question § 1331 jurisdiction flowed from our analysis that Congress intended to confine *private* TCPA claimants to state court. Every rationale we relied upon to support that conclusion in <u>ErieNet</u> applies with equal force against the contention that Federal courts may exercise their diversity jurisdiction to hear TCPA claims.[8]

---

[8] Judge Rendell's opinion maintains that aggregation of small claims for purposes of diversity jurisdiction assuages any concern that small claims could worm their way into

12

## F. *Class Action Fairness Act of 2005*

Nor am I persuaded to change my view because of the fact that the Class Action Fairness Act (CAFA) was enacted later in time than the TCPA. As I understand it, the argument is that since CAFA was enacted in 2005, fourteen years after the TCPA was enacted in 1991, and since CAFA is a jurisdiction-conferring statute, it created Federal jurisdiction over claims brought under TCPA, even if the Federal courts would have lacked jurisdiction to hear them *before* CAFA became effective. I believe that it reads too much into CAFA to conclude that it creates jurisdiction over particular causes of action that Congress had earlier decided to exclude from Federal jurisdiction.

CAFA was enacted to expand Federal jurisdiction over class actions involving classes with certain characteristics (e.g., only minimal diversity) that would have precluded Federal jurisdiction pre-CAFA. CAFA could not, and did not, confer jurisdiction over particular *causes of action* that Congress had previously withdrawn from the Federal courts. It is for Congress and only Congress, not the courts, to decide whether TCPA should be amended to allow claims to be heard in the Federal courts. Cf. Bowles, 551 U.S. at 212 ("Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider."). The courts of the Third Branch should not, and cannot, amend Congress's legislation to accord with a court's view. It is not a judicial function to enact legislation, or to repeal or amend legislation by court decree. That function -- the legislative function -- has been assigned by the Constitution to the Congress -- not the courts.

---

Federal court. See Rendell op. at 33-35, 39-40. But we are not concerned with whether diversity jurisdiction over TCPA claims makes sense as a matter of policy; rather, our task is to hew as closely as possible to the intent of Congress, as evidenced by the statutory terms its has chosen. See infra Section III.F.

**IV.**

I therefore respectfully dissent from the opinions of Judge Rendell and Chief Judge McKee. I would hold that Federal courts lack *all* jurisdiction -- under either § 1331 or § 1332 -- to adjudicate claims asserted under 47 U.S.C. § 227(b)(3). I would therefore affirm the District Court's decisions on the basis that no jurisdiction existed to entertain the various plaintiffs' claims. Thus, I do not address the issues that the majority opinion has discussed pertaining to class actions and Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co., 559 U.S. ___, 130 S.Ct. 1431 (2010).